■ In the Matter of LANE BRYANT, INC., Respondent, v. TAX COMMISSION OF THE CITY OF NEW YORK, Appellant.— Final order, entered on or about

March 15, 1961, reducing assessments on real property for the tax years 1958–59, 1959–60 and 1960–61, unanimously reversed, on the law and the facts, the assessments reinstated, and the petition dismissed, with costs of the proceeding and the appeal to respondent-appellant. The 1958 sale of the property for $3.2 million cash, concededly at arm's length, is the outstanding factor in support of the assessments. While it is true that the prior judicial determinations are influential in determining value, this is so only as to the facts existent at or prior to such determinations (*People ex rel. Hilton* v. *Fahrenkopf*, 279 N. Y. 49, 52–53). On the other hand, it is the market value of the property, at the time of the assessments, which is the standard of value (Real Property Tax Law, § 306; *People ex rel. Parklin Operating Corp.* v. *Miller*, 287 N. Y. 126, 129). An actual sale of the subject property at arm's length is of course the very best of evidence, because directly reflective of market value, if recent in time, and not explained away as abnormal in any fashion (cf. *Matter of 860 Fifth Ave. Corp.* v. *Tax Comm.*, 8 N Y 2d 29, 31; *Matter of City of N. Y.* [*Madison Houses*], 17 A D 2d 317, 321). Taxpayer's effort to explain away the sale price on the ground the purchaser had tax exempt status as to income is of no avail. It is not to be assumed that even such a purchaser will pay more for an income-producing property than the market requires that it must pay, especially when it compares other investment opportunities. The market determines the price and not the tax status of the purchaser, although, to be sure, collectively, the tax status of potential purchasers may influence or, in the rare instance, even determine the market price. The taxpayer is correct, however, in arguing that this department store property was not a specialty meriting evaluation on the basis of replacement cost (*Matter of City of N. Y.* [*Maxwell*], 15 A D 2d 153, 171). On the other hand, the substantial renovation of the building in 1947 offset the age of this 1918 building, as did the less substantial renovations in 1954 and 1959. Similarly, the increases in cost of reconstruction in the past decade offset somewhat the economic rate of depreciation. These parallel offsetting factors may help explain the market price of $3.2 million in 1958. This, although at the same time, the income of the property was not affected for the foreseeable future under the fixed income net lease to which the sale was made subject. Of course, a fixed income asset, like a bond or preferred stock, may be valued differently in the market at different times because of factors influencing the expected rate of return. But even if these several factors did not fully explain the 1958 sale price, the actual sale at arm's length is new evidence of the highest rank, if unexplained, to determine the true value of the property as of such time, and subsequent to the times of the prior judicial proceedings. In any event, no principle of *res judicata* prevents reliance upon the new significant evidence (*People ex rel. Hilton* v. *Fahrenkopf*, 279 N. Y. 49, 53, *supra*). Settle order on notice. Concur — Breitel, J. P., Rabin, Valente, McNally and Stevens, JJ.