Abraham J. Gellihoff, J.
Plaintiffs move for summary judgment (1) declaring invalid an appraisal conducted for the purpose of determining the rent payable to defendant by Plaza Hotel Associates (hereinafter referred to as “Associates”), (2) directing a new appraisal, and (3) directing an accounting of excess rental payments claimed to have been made to defendant.
On October 1, 1953 Hilton Hotel Corporation (hereinafter “Hilton”), the owner of the land and the buildings thereon known as the Plaza Hotel, sold the hotel property to Parlc59th Street Corporation (hereinafter “ Park ”). As part of the transaction, Hilton received an agreement entitling it to an option, exercisable between October 1, 1965 and March 31, 1966, to repurchase an undivided one-half interest in the land only, for (1) $400,000 and (2) an assumption of one half the mortgage indebtedness and one half the real estate taxes applicable to the land itself. The option agreement provided that", upon exercise of the option, Hilton (or its assignee) would grant to the then owner of the other undivided one-half interest in the land *485 a lease of Hilton’s one-half interest in the land for a term of 20 years with an option to the lessee to extend the term for an additional 30 years. If, however, the property was no longer used primarily for hotel purposes at the time of the exercise of Hilton’s option, Hilton' (or its assignee), was not to be required to enter into such a lease and was to have all the rights of a tenant in common of the land. Annexed to the option agreement of October. 1, 1953 was the form of the lease to be executed in the. event that the option was exercised.
Article Two of the lease form provides that “Lessee shall pay as rent for the interest in the land hereby demised an amiual ground rental equal to 3% of the value of all of the land (wherever permitted by the context the word ‘ land ’ as herein used is intended to mean the land only, exclusive of the buildings and improvements thereon) as of the date of the commencement of the term of this lease.” The same article provides for an appraisal of the land value if the parties fail to agree as to the value within 60 days from the commencement of the term of the lease.
Article nine of the lease form provides that the lessee shall have the right to alter, reconstruct, and demolish any and all buildings and improvements and erect new buildings and structures “ provided that if any such renovation,' reconstruction, demolition or new building or structure is designed to be used primarily for purposes other than hotel purposes, the prior written consent of the Lessee [sic] shall be required.” (Italics supplied.) The italicized word “lessee ” is obviously a typographical error and must be read as “ lessor ”. Otherwise the article is ivholly meaningless.
Article eleven provides that “if at any time the land and the buildings and improvements thereon shall cease to be used primarily for hotel purposes, the Lessor shall have the right to terminate this lease by written notice given * * * within six months from the date of the cessation of such use.”
Article nineteenth provides that upon the expiration or other termination of the lease for any reason whatever, the lessor and the owners of any other interest in the land or buildings shall thereupon have such “ rights, privileges and obligations as by law such ownership bestows or entails in' the absence of any agreement. ”
In the Fall of 1965, Hilton sold its option rights to Chatham Associates, Inc. (hereinafter . “ Chatham ”) which thereupon' exercised the option and acquired a 50% interest in the land underlying the Plaza Hotel structure. As required by the option agreement, Chatham granted a lease, in the form annexed to the *486 agreement, to a subsidiary of plaintiff Associates. The subsidiary subleased the leasehold interest to Hotel Corporation of America (hereinafter “HCA”), the coplaintiff herein, and assigned the interest retained by it to Associates. Chatham transferred its half interest in the land to defendant Wellington Associates, Inc. At the present time, therefore, Associates and Wellington each own an undivided half interest in the land. Associates owns the entire building and is the lessee of Wellington’s interest in the land. HCA is sublessee of Wellington’s interest in the land and is the present operator of the hotel.
As the parties were unable to agree as to the value of the land for the purpose of determining the rental to be paid to defendant, an appraiser was selected by Associates and another by Wellington. Since the appraisers could not agree, a third appraiser was selected. He and the appraiser selected by Wellington appraised the value of the land at $28,000,000.
Concededly, all three appraisers valued the land as if it were unencumbered by the lease and by the restrictions to hotel use imposed by the lease. The third appraiser’s appraisal states that the purpose of the appraisal is to establish the market value, of the land “ as though free and clear of any encumbrances, vacant and ready to be devoted to the highest and best use ” and concludes ‘1 Employing all available guides to value giving consideration to location, size of plot and highest and best use * * * the market value of the land is Twenty-Eight Million Dollars.” The appraisal of the appraiser selected by defendant also states that the land was to be appraised “ as if vacant and unimproved ’ ’ and that he considered, inter alia, the ‘ ‘ highest and best use to which the land may be put.” The appraisal by the appraiser selected by Associates states that it values the land “as if vacant and unimproved ’ ’ and also declares that “ in our determination of value, wé have projected a hypothetical office building improvement ” for the land. The valuation is based, in part, on ‘ ‘ earnings and residual land value which would be achieved if a multistory office building were erected on the commercially zoned land. ’ ’
All three appraisers have thus ignored the fact that the land is encumbered by a lease for 20 years, extendable at the lessee’s option for an additional 30 years, under which the property may be used only for hotel purposes. Admittedly the appraisers all were of the opinion that such a use was not the highest and best use to which the property could be put and fixed values materially in excess of those which they would have found if they had to take into account that the property was restricted to use as a hotel.
*487 . Plaintiffs Urge that the lease provision for fixation of the value of the land does not provide that the land was to be valued as if it wore unencumbered by the lease restricting the use of the property to hotel purposes. They urge that the purpose of using the words value of ‘ ‘ the land only, exclusive of the buildings and improvements thereon ” was merely to make it clear that the value was not to include the value of the building on the land, no part of which was owned by Hilton or its assignee. They point out that, when the parties wished to state that an interest should be free of encumbrances they did so, giving as an example a provision of paragraph 4 of the option agreement that Hilton’s interest in the “land (exclusive of the buildings and improvements thereon) ” was to be “ free of all encumbrances except as hereinafter stated ”.
In the court’s opinion, the points made by plaintiff are well taken. There is no suggestion in the language of article two that, in valuing the land, the restrictions to hotel use imposed by the lease were to be disregarded and the land valued as if it were vacant and available for the highest and best use. In United Equities v. Mardordic Realty Co. (16 Misc 2d 996, mod. 8 A D 2d 398) the lease provided for rent for the renewal term equivalent to 6% of the value of the land. The Special Term had held that restrictions imposed by the lease as to the use of the property had to be taken into account by the appraisers. The Appellate Division agreed with this reasoning, but disagreed with the lower court’s findings that there were such restrictions. It said (p. 400): “ This case is unlike Ruth v. S.Z.B. Corp. (2 Misc 2d 631, 634, affd. 2 A D 2d 970) wherein provision was made for basing the rental upon the fair value of the land 1 free of lease and unencumbered. ’ Here, there is no language in the lease or modification thereof which excludes them in the determination of the fair market value of the land. The fair market value of the land is therefore to be determined by reference to the term of and the renewal options contained in the lease and modifications thereof, and, in addition, the restrictions, if any, therein affecting the land.”
That valuations of land must take into consideration all encumbrances thereon, including restrictions as to its use, unless there is a clear provision to the contrary, is well settled (Kernochan v. Manhattan Ry. Co., 161 N. Y. 339; Livingston v. Sage, 95 N. Y. 289, 294 — 95; United Equities v. Mardordic Realty Co., supra).
Defendant claims that the case of 185 Lexington Holding Corp. v. Holman (19 Misc 2d 521, affd. 10 A D 2d 569, affd. 8 N Y 2d 965) requires a holding that the land was to be valued *488 without regard to the lease and the restrictions to hotel use imposed therein. In the cited case, the original lease had required the lessee to demolish the existing building and erect another in its place, which was done. The lease provided that 1 ‘ the rental is to be six (6%) per cent of the value of the land only, without improvements, at the time ”. The court held that “ the express purpose of the landlord was to provide for rental based upon the value of the land only which would not be subject to the acts of either party ’ ’ and that ‘1 it was intended to remove any other consideration from the determination of the rental to be fixed during the succeeding two 21-year renewal periods. ’ ’ In other words, the court interpreted the language as excluding consideration of the lease itself in the fixation of the value of the land.
In this court’s opinion, the 185 Lexington Holding Corp. case (supra) is not applicable here. The obvious purpose of the exclusion of the building from the valuation to be made in the instant case was to ensure that the valuation would not include the value of the building, in which - Chatham and its assignee, Wellington, had and have no interest whatever. Furthermore, in the case at bar, other provisions of the option agreement and the lease indicate that Hilton (or its assignee) is to obtain the advantage of the highest and best use of the land only (1) if at the time of the exercise of the option the land is no longer being used for hotel purposes (in which event no lease is required and Hilton [or its assignee] is to have all the rights of a tenant in common) or (2) if the property ceases during the term of the lease to be occupied for hotel purposes without the lessor’s consent (in which event the lease is to terminate and Hilton, or its assignee, is to become a tenant in common). There is nothing in the language of the option agreement or of the lease to justify an interpretation which would base the rent on the value of the land when devoted to its highest and best possible use, while the lessee is restricted by the lease to the much less valuable hotel use. In other words, it seems clear that the parties intended Hilton (and its assignees) to obtain the benefit of a nonhotel use only if the property ceased to be operated as a hotel, and not while it is being operated as a hotel in accordance with the mandate of the lease.
This court, accordingly, holds that in valuing the land as if it were available for the highest and best use, free from the restrictions of the lease, the appraisers violated the provisions of article two of the lease which did not authorize such an appraisal. They also violated the lease in making an appraisal as to the value of the land as of February 1, 1966, instead of October 1, 1965, the *489 commencement date of the term. Article two requires the valuation to be made “as of the date of the commencement of the term of this lease.”
The defendant’s claim of an estoppel on the part of plaintiffs to challenge the validity of the appraisal is without merit and requires no discussion, especially since there is no evidence that defendant relied to its damage on plaintiffs’ failure to object to the first two appraisals prior to the submission to the third appraiser.
For the reasons indicated, the motion is granted to the extent of granting judgment declaring the appraisal invalid and directing a new appraisal. Until such new appraisal and a proper determination of the rent to be paid, it is impossible to determine whether and to what extent plaintiffs have paid excessive rent. That branch of the motion which seeks an accounting for excess rental is therefore held in abeyance pending a determination of the rent to be paid, for which purpose this court retains jurisdiction in the matter.