Scileppi, J.
Appellant, F. W. Woolworth Co., appeals from an order of the Appellate Division, First Department, which (1) reversed on the law and the facts an order of the Supreme Court, New York County, reducing assessments in consolidated certiorari proceedings to review the assessments for the purposes of taxation on real property located at 14-22 Cortlandt Street, in the Borough of Manhattan, for the tax years 1954-55 through 1958-59, and (2) reinstated the assessments for the tax years involved.
The assessments and findings of Special Term and the Appellate Division for each of the years in question were as follows:

The subject property consists of a plot about 25,850 square feet running through the block from Cortlandt Street to Dey Street, about 150 feet west of Broadway and 55 feet east of Church Street. The two frontages measure 119.1 feet on Cortlandt Street and 125.4 feet on Dey Street and the average depth approximates 213 feet. The improvement is a two-story and basement, fireproof structure, originally built in 1933 but entirely altered for Woolworth’s occupancy in 1953-54.
In August, 1951 the Equitable Life Assurance Society of the United States purchased the property from the City Bank Farmers Trust Company for $2,137,500, all cash. Simultaneously with this sale, the building was leased to Woolworth for a 40-year term at a fixed annual net rental of $128,250. The lease provided, inter alla, that Equitable would lend Woolworth up to $1,000,000 for alterations if Woolworth altered the building for its own use as a retail store occupying at least 75% of the ground floor and basement, on or before August 1, 3956. If Woolworth did not alter the building for its own use by August 1, 1956, or if Equitable were prevented by law from *564 lending (lie moneys lo cover (he cost of the alteration, "Woolworth agreed to purchase the property at (he original purchase price of $2,137,500 reduced "by 2% of such amount per annum from the date of the lease to the" date of title closing. If Woolworth did alter the building, it also had an option to purchase the property on or before November 1, 1956 for $2,137,500 less 2% of such amount per annum, from the date of closing of title, plus the amounts advanced by Equitable.
In 1953-54 Woolworth altered the building. The cost of the alteration was computed by Woolworth’s architect at $1,329,946 of which sum Equitable was responsible for $1,000,000.
Upon the completion of the alterations in November, 1954, Woolworth exercised its option to purchase and, in accordance with the terms of the lease, acquired the property for $2,993,000. A purchase-money mortgage for the entire amount was given by Woolworth to Equitable, requiring payments of interest at 31/2% and amortization at 1%%.
In reinstating the assessments, the Appellate Division relied heavily upon this sale. The court said: “In our opinion the total assessments were less than the fair value of the premises. In 1951, the Equitable Life Assurance Society of the U. S. purchased the property for $2,137,500 in an all-cash transaction. Thereafter, and before 1954; $1,329,946 was spent upon alterations and the modernization of the building. That these figures, which in total exceed the assessment for 1954-1955, do not represent an improvident purchase and indicate a fair value .is shown by the subsequent history of the property. In 1954, petitioner exercised an option, it received in 1951, to purchase and acquire the property for $2,993,000. This figure exceeds the subsequent assessment by over $200,000. The record shows no basis for a finding of any diminution in value during the ensuing years, and, in fact, the general inflation of real estate values points to the contrary. The arms-length sale between corporations knowledgeable in the field establishes prima facie values and the record is barren of cogent proof that should disturb them.” (18 A D 2d 612.)
Woolworth attacks this decision upon the following grounds: that the court below placed undue emphasis on this sale in utter disregard of the other evidence in the record; that the price paid in 1954, when Woolworth exercised the option, bore no *565 relation to the market vahío because this was not an “ arms-length sale and that, with respect to the 1954-55 assessment, the Appellate Division’s finding that “ before 1954, $1,329,946 was spent upon alterations and the modernization of the building ”, was erroneous and completely unsupported by the record.
Woolworth’s first contention is without merit. The evidence on the trial at Special Term consisted mainly of conflicting testimony by the expert appraisers who testified for the opposing parties. The Appellate Division’s decision clearly indicates that the court reviewed this other evidence but found no “ cogent proof that should disturb ” the values established by the sale to Woolworth in 1954. It cannot be said that, by placing strong emphasis on the 1954 sale, the Appellate Division erred as a matter of law. Only recently in Matter of Lane Bryant v. Tax Comm. of City of N. Y. (19 N Y 2d 715), a case strikingly similar to the one at bar, ave affirmed a decision of the Appellate Division Avhich reversed the findings of the Special Term and reinstated the assessments on the ground that the price of the arms-length sale of the property there involved, if unexplained, Avas exfidence of the highest ranli to determine the true value of the property as of that time.
Woolxvorth’s contention that sale price of $2,993,000 did not represent the true values of either the land or the structure is predicated on the fact that this AAas a “no cash transaction ”; that this sale xvas a custom-built financial arrangement designed to enable it to acquire the property at its original 1951 cost of $2,137,500 — discounted by 2% a year to the date of purchase — plus a loan of $1,000,000 to enable it to alter and equip the existing structure. This argument, though persuasixm, overlooks the fact that an expenditure of $1,000,000 (and here more than $1,300,000 xvas actually spent) to improxTe the structure xvould substantially enhance the x7alue of the property. Thus, the resale value at $2,993,000 in 1954, after the improvements had been made, merely reflects the inexfitably increased value of the property which the parties themselves realistically recognized. No doubt a portion of this sum xvas expended for equipment and other items which would not enhance the value of the structure, but the record indicates that the major portion of the sum expended related to structural changes in the real estate. In sum, this sale by parties knoxvlcdgeable in the *566 field of property, the alteration of the premises at an expense of more than $1,300,000, the general rise in economic values, and the testimony adduced at Special Term on behalf of the city lead us to conclude that the findings, of the Appellate Division, insofar as the tax years 1955-56 through 1958-59 are concerned, should be affirmed.
However, with respect to the proceeding to review the assessment for the tax year 1954-55, the Appellate Division’s determination should be modified.
In a prior proceeding, in which the same experts testified for both Woolworth and the city, the assessments, the values fixed by Special Term and the appraised values of the experts were:

For the tax year 1954-55, the first year here under review, which immediately followed the tax years which were the subject of the prior proceeding, the assessments, the values fixed by Special Term and the appraised values of the experts compare as follows:

Relying on People ex rel. Hilton v. Fahrenltopf (279 N. Y. 49) for the proposition that, in absence of proof showing a change in circumstances, a determination of value for one year should be followed for a subsequent year, Woolworth charges that the Appellate Division’s finding of a change in circumstances — that “ before 1954, $1,329,946 was spent upon alterations and the modernization of the building ” — was erroneous and unsupported by the record. Thus, Woolworth would have us reinstate the order of the Special Term for the tax year 1954-55. We cannot agree.
Woolworth is correct, however, in urging that the Appellate Division’s finding was erroneous. The proof in the record shows that the alteration of the building was completed either in *567 May or November of 1954, but no specific finding as to date of completion was made by the Appellate Division. Indeed, on January 25,1954, the taxable status date for the 1954 — 55 assessment, the building was vacant and still in the process of alterations. However, this is not to say that value determined in the prior proceeding should have been blindly, followed in the proceeding here under review. Contrary to Woolworth’s assertions, the Ililton case (supra) merely stands for the rule that váluo of' property for taxation as adjudicated in one year may be evidence of its assessable value for a succeeding year.
■In opposition to Woolworth’s argument, the city points to the fact that on the tax status date the building was in the process of being altered and the sale of the premises for almost $3,000,000 was consummated in November of 1954.
The city seems to be urging that property may be assessed at a higher value than it is actually worth on the tax status date if it is apparent on that date that the property will have an increased value at some time during the taxable year. Woolworth, on the other hand, argues that the building was not so substantially altered on the tax status date as to warrant a higher assessment than had been made for the preceding year. We think the better view, however, is to simply assess the property at its value on the tax status date. If this is done, the city cannot collect a greater tax than it is entitled to, and Woolworth cannot receive a windfall by being taxed according to the values determined on the prior proceeding.
Since it is not clear that the city determined the value of the premises on the tax. status date for the 1954-55 tax year, the decision of the Appellate Division should be modified to the extent that it reinstated the assessment for that year and the matter should lie remanded to Special Term to take further proof upon which a proper determination can be made. In all other respects, the decision of the Appellate Division should be affirmed.
Chief Judge Fuld and Judges Van Voorhis, Burke, Keating and Breitelconcur; Judge Bergan taking no part.
Order modified in accordance with the opinion herein and, as so modified, affirmed, without costs, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.