37 N.Y.2d 273 (1975)
Plaza Hotel Associates et al., Respondents,
v.
Wellington Associates, Inc., Appellant.
Court of Appeals of the State of New York.
Argued June 4, 1975.
Decided July 8, 1975.
David W. Peck, Leo Brady and Barbara A. Mentz for appellant.
Arthur L. Liman and Allyne R. Ross for respondents.
Judges JASEN, GABRIELLI, JONES, WACHTLER and FUCHSBERG concur with Judge COOKE; Chief Judge BREITEL concurs in result in a separate opinion.
*274 COOKE, J.
Once again, we are called upon to review the valuation given to the realty involved in this action. In the first proceeding (Plaza Hotel Assoc. v Wellington Assoc., 55 Misc 2d 483, affd 28 AD2d 1209, affd 22 N.Y.2d 846), it was held that the appraisers erroneously valued the land at its highest and best use, as if it were vacant, without regard to the fact that the land was encumbered by a lease which restricted the use of the property to hotel purposes only, for a period of up to 50 years. A new appraisal, based upon the land, burdened with the restrictions in the lease, was therefore directed.
The history of the transactions, leading up to the present *275 dispute between the parties, can be traced back to October 1, 1953, when Hilton Hotel Corporation (Hilton), then the owner of the land and buildings known as the Plaza Hotel, located along Fifth Avenue in New York City, entered into an agreement with Park-59th Street Corporation (Park) to sell the property. As part of the contract, Hilton was granted an option, exercisable between October 1, 1965 and March 31, 1966, to repurchase an undivided one-half interest in the land only. The consideration to be paid was $400,000, the assumption of one half of the mortgage indebtedness and the payment of one half of any applicable real estate taxes owing on the land. It was further provided that, if the option was exercised, Hilton, or its assignee, would lease back the one-half interest in the land to the owner of the remaining portion for a term of 20 years with an option at that juncture to extend the lease for 30 years thereafter, so long as the land was used primarily for hotel purposes. If not so used, the relationship of the parties was to be that of tenants in common.
Article two of the lease form, annexed to the option agreement, provides: "Lessee shall pay as rent for the interest in the land hereby demised an annual ground rental equal to 3% of the value of all of the land (wherever permitted by the context the word `land' as herein used is intended to mean the land only, exclusive of the buildings and improvements thereon) as of the date of commencement of the term of this lease." This article further stipulated that, if the parties failed to agree as to value of the land within 60 days from the commencement of the term of the lease, appraisers would be secured to make that determination. Pursuant to article three, Hilton obligated itself to contribute a proportionate share of the taxes on the land, buildings and improvements, the amount to be ascertained by a formula specified in the agreement.
In the fall of 1965, Hilton assigned its rights under the option agreement to Chatham Associates, Inc. (Chatham), an affiliate of defendant Wellington, which subsequently exercised the option to purchase a one-half interest in the land on which the Plaza Hotel is situated, and granted a lease to a subsidiary of plaintiff Associates under the terms set forth in the agreement. The subsidiary then subleased the interest to plaintiff Hotel Corporation of America (HCA) and assigned the interest retained by it to Associates. Meanwhile, Chatham *276 transferred its one-half interest in the land to Wellington. The total price paid by Wellington for this one-half interest included the $3,600,000 for the option itself, $400,000 to the grantor as provided by the option agreement, and $910,410.50 constituting the assumption of one half of the then existing mortgage indebtedness.
Thus, at the termination of the above transactions and the commencement of the lease, Associates owned the entire building and an undivided one-half interest in the land and HCA became the sublessee of Wellington's one-half interest. Wellington, as the owner of the other one-half interest in the land, was entitled, under article two, to receive an annual ground rental equal to 3% of the value of all the land, exclusive of buildings and improvements, as it existed on October 1, 1965.
In the 60-day period following commencement of the term of the lease, the parties were unable to agree upon the "value" of the land, an element in fixing the ground rental. Pursuant to the procedures set forth in the lease agreement, appraisers were engaged to settle the dispute. As noted previously, however, their appraisals were rejected, as premised upon the erroneous theory that the land could be valued at its highest and best use, notwithstanding the restrictions which encumbered the property. A new appraisal was directed (Plaza Hotel Assoc. v Wellington Assoc., 55 Misc 2d 483, affd 28 AD2d 1209, affd 22 N.Y.2d 846, supra).
Thereafter, the parties, being unable to agree upon new appraisers, stipulated that the court, pursuant to CPLR article 62, make the necessary finding of value and also consented to the appointment of a referee to conduct a hearing. Predicated upon the referee's recommendation and the testimony of the expert appraisers, Special Term then found that the value of the land was $18,500,000. It was also found that the sale of the one-half interest to Wellington, for approximately $5,000,000, was an arm's length transaction between two sophisticated real estate investors. The court disagreed with plaintiff's contention, however, that the value must be twice the amount paid by Wellington for its one-half interest. Instead, reliance was placed upon other surrounding circumstances, such as the uniqueness of the property and novelty of the varied interests of the parties, as demonstrating that the term "value" was not, in this case, congruent with the term "price".
On appeal, the Appellate Division modified the order of *277 Special Term by reducing the value of the land to $11,500,000. It reasoned that the court below had failed to give "controlling significance" to the purchase price paid by Wellington for its one-half interest in the property ($4,910,410.50), particularly in view of the finding which was affirmed on appeal, that it was an arm's length transaction. By the modification to $11,500,000, the Appellate Division apparently doubled the purchase price and added 15% to cover adjustments resulting from other factors.
Generally, the market value of real property is the amount which one desiring but not compelled to purchase will pay under ordinary conditions to a seller who desires but is not compelled to sell (Heiman v Bishop, 272 N.Y. 83, 86; Sparkill Realty Corp. v State of New York, 254 App Div 78, 82, affd 279 N.Y. 656). At one time, evidence of sales of the same or of comparable property was excluded, except upon cross-examination of an expert witness (Robinson v New York El. R. R. Co., 175 N.Y. 219, 222), on the theory that one party, either vendor or vendee, might have made a bad bargain (see Ettlinger v Weil, 184 N.Y. 179, 183; Matter of Thompson, 127 N.Y. 463, 467, 468-469). It came to be realized, however, that in the absence of some compulsion to buy or sell and under ordinary market conditions, actual sales furnished valuable evidence of the value attributed to the property (Matter of 860 Fifth Ave. Corp. v Tax Comm. of City of N. Y., 8 N.Y.2d 29, 31), and evidence of this nature became admissible on direct examination (Village of Lawrence v Greenwood, 300 N.Y. 231, 236-237; see, also, Matter of 860 Fifth Ave. Corp. v Tax Comm. of City of N. Y., supra). Although value and price are not necessarily synonymous (see People ex rel. Buck v Rapp, 36 NYS2d 790, 794, affd 266 App Div 709), the rule has evolved that the purchase price set in the course of an arm's length transaction of recent vintage, if not explained away as abnormal in any fashion, is evidence of the "highest rank" to determine the true value of the property at that time (Matter of Woolworth Co. v Tax Comm. of City of N. Y., 20 N.Y.2d 561, 565; Day v State of New York, 39 AD2d 821; Matter of Atlas Realty Inv. v Lennox, 38 AD2d 739, affd 34 N.Y.2d 780; Vasile v State of New York, 30 AD2d 1042, affd 24 N.Y.2d 969; Vanech v State of New York, 29 AD2d 607; Matter of Lane Bryant v Tax Comm. of City of N. Y., 21 AD2d 669, affd 19 N.Y.2d 715; see 4 Nichols, Eminent Domain [3d ed], § 12.311 [1], pp XX-XXX-XX-XXX). In the case at bar, both courts below specifically found *278 that the transaction was made at arm's length between two parties well versed in real estate dealings. As an affirmed finding of fact, in the absence of legal error, it is beyond our power to review (Rudman v Cowles Communications, 30 N.Y.2d 1, 10; Harrington v Harrington, 290 N.Y. 126; Cohen and Karger, Powers of the New York Court of Appeals, § 109). Thus, the price paid by Wellington for its undivided one-half interest, being proximate in time to the date the land was to be valued, October 1, 1965, should be accorded significance of the highest rank as a determiner of the value of the property, unless explained away as abnormal in some fashion.
Special Term noted that although the negotiations were at arm's length, the nature of the transaction and the varied interests of the parties were so unusual that the purchase price could not be relied upon and that even the option itself was not ordinary. Despite the seemingly complicated terms of the agreements, however, we do not share the belief that the complexities were so unusual as to take the case outside the scope of the general rule. When Wellington purchased the option in 1965, it was obviously aware of the conditions and restrictions found therein, but nonetheless it agreed upon a price that it thought reasonable under the circumstances. In any event, the Appellate Division, in adding 15% to the total value after the purchase price was doubled, has taken into consideration other relevant factors. The fact that defendant was receiving only a 4% return on its investment does not lead us to a contrary conclusion. In a case such as this, it is not a function of the courts to insure the profitability of business transactions, nor do they have the power to remedy a failure of the parties to foresee far-ranging changes in the economy.
The order of the Appellate Division should be affirmed.
Chief Judge BREITEL (concurring).
I concur in result, but I do not conclude that the gross purchase price for the option and its exercise has "controlling significance" in determining the value of one-half interest in the land acquired by defendant. The two one-half interests in the land, as argued by defendant, were not equal. One-half interest is owned by the long-term lessee, and the other is burdened by the lease without an option to terminate the lease if hotel use should cease to be the highest use. I accept, albeit with some doubt, that Special Term should have accorded some recognition to the gross option price as an index of value of the land. The *279 important thing, however, is that the unique purchase of the option under the unique economic factors applicable to this unique transaction provided no reliable, let alone a conclusive, index of value which a price fixed between willing buyers and willing sellers in the open market would represent.
I vote to affirm, nevertheless, because the Appellate Division in reversing Special Term, despite its reference to "controlling significance", in fact awarded a 15% higher value to the land than would have resulted from giving mechanical recognition to the gross purchase price for the option.
Order affirmed, with costs.