■ In the Matter of RUSCIANO & SON CORPORATION et al., Respondents, v WILLIAM E. ROCHE, as Assessor of The Town of Pelham, et al., Appellants. In the Matter of RUSCIANO & SON CORPORATION et al., Respondents, v RICHARD R. BLESSING, as Assessor of the Village of Pelham Manor, et al., Appellants.—In consolidated proceedings to review the 1973, 1974 and 1975 tax assessments on certain properties, the appeals are from an order of the Supreme Court, Westchester County, dated November 3, 1977, which, *inter alia,* reduced the tax assessments on the subject properties for the said years. Order reversed, on the law, without costs or disbursements, and new trial granted. The order appealed from reduced the tax assessments on three separate tax lots all owned by the Rusciano family through separate corporations, as an industrial park. Lot No. 1 is owned by petitioner Rusciano & Son Corporation, Lot No. 1A by petitioner Secor Lane Corpora-

tion, and Lot No. 5 by petitioner Vinrus Corporation. At the time of the commencement of these proceedings, another corporation controlled by the Rusciano family, i.e., the Pennant Building Corporation, was contesting assessments on Lot No. 1B as well. However, by notes of issue and statements of readiness dated July 13, 1976, the town and village were notified that "No appraisal is submitted for Penant [sic] Building Corporation, petition for the review of assessment for said corporation herewith being withdrawn." In determining the value of the improvements of the subject properties, the expert witness for the town and village (in the words of Special Term) "[relied] heavily on a market data approach placing heavy emphasis on Lot 1B * * * as a comparable sale". It appears from the record that Lot No. 1B was leased to American Cystoscope Makers, Inc. (Cystoscope), in 1956 or 1957, and that in 1958 the lease was amended to include an assignable option to purchase for $712,500. During the trial, the town and village introduced into evidence a certified copy of a letter from Cystoscope to the Pennant Building Corp. dated January 20, 1976 wherein Cystoscope notified Pennant that it intended to exercise its option to purchase Lot No. 1B for $712,500. It was further established that Cystoscope assigned the option to one Joseph Rustin (Rustin), an adjoining landowner, for an additional $37,500 and that Rustin paid the rent on Lot No. 1B for six months. Thus, the appraiser for the town and village argued that the $712,500 purchase price was the best indicator of market value. Although Special Term conceded that the Pennant building was "structurally similar to other Rusciano buildings", it held that Lot No. 1B was "not an accurate guide to valuing the three parcels under review for numerous reasons: "1. The Rusciano complex contains over 95,000 square feet of private roads and over 241,000 square feet of open parking for which the owner pays taxes, services, maintains and polices. 2. The Pennant Building fronts on Pelham Parkway, a major thoroughfare. 3. The floor area ratio of the Pennant Building to the lot involved is 88% compared to a floor area ratio of the Rusciano properties of 56%. 4. There is serious question as to whether the sale of the Pennant Building was an arms length transaction between a willing buyer and a willing seller inasmuch as the proof clearly establishes that it was a sale to an adjoining land owner who acquired a lease to the Pennant Building made in 1956 to a third party containing an option to purchase. In the Court's opinion, in view of all of the factors testified to in connection with the Pennant Building, the Court must discount it as a truly comparable sale." In our view, the reasons set forth by Special Term were not of sufficient magnitude to warrant its failure to consider the purchase price of Lot No. 1B in fixing the fair market value of the remaining parcels in the industrial park. The effect upon value, if any, of the location of Lot No. 1B as compared to the other parcels could be offset by appropriate adjustments. What is significant is the fact that Lot No. 1B was an integral part of the Rusciano complex and was physically very similar to Lot No. 1A, which is one of the lots under review. Specifically, petitioners' appraiser admitted that the unitary character of the complex was the "essence" of his appraisal and that Lots Nos. 1A and 1B were comparable in size. When asked to evaluate the comparability of Lot No. 1B to the rest of the Rusciano complex, the appellants' appraiser testified: "It is very similar. It is the same type of building, the same type of improvement. Generally, it is similar in style, in age, in type of construction, in function utility." Nor was Special Term correct in questioning whether the sale was an arm's length transaction between a willing buyer and a willing seller. Although it is true, as Special Term suggested, that Rustin, the adjoining landowner, might

have paid an inflated price in order to acquire an adjoining parcel, the fact remains that the original price of $712,500 was set in an arm's length transaction in the amendment to the lease between the Ruscianos and the original lessee. It is well settled that the purchase price set in the course of an arm's length transaction of recent vintage, if not explained away as abnormal in any fashion, is evidence of the *"highest rank"* to determine the true value of the property at that time *(Matter of Woolworth Co. v Tax Comm. of City of N. Y.,* 20 NY2d 561, 565; *Plaza Hotel Assoc. v Wellington Assoc.,* 46 AD2d 642, affd 37 NY2d 273, 277; *Village of Lawrence v Greenwood,* 300 NY 231). Accordingly, the order appealed from must be reversed and the matter remanded for a new trial so that the purchase price of Lot No. 1B may be utilized in determining the true fair market value of the three parcels under review. Suozzi, J. P., O'Connor, Rabin and Shapiro, JJ., concur.