■ Louis P. Faraone, Respondent-Appellant, v State of New York, Appellant-Respondent. (Claim No. 60127.) — Cross appeals from a judgment in favor of claimant, entered May 7, 1981, upon a decision of the Court of Claims (Koreman, J.). On June 7, 1973, the State of New York appropriated the northernmost 8.228 acres of claimant's land in Rensselaer County as part of the construction of Interstate Route 90. The taken property was a portion of a total of about 75 acres assembled in three separate purchases in 1972 and generally located at the point where the Berkshire Spur of the New York State Thruway crosses U.S. Route 9. The southernmost (southern) parcel consisted of 20.5 acres, was acquired for $110,000, and bordered the Thruway on the south, Route 9 on the west, and the Thruway B-1 exit ramp on the east. The middle parcel contained 44.6 acres and was acquired for $36,000. The northern parcel consisted of 9.9 acres, was landlocked, and was purchased for $9,000. At the time the purchase agreements on the foregoing parcels were executed, all of the lands involved were zoned residential-agricultural. Only in the case of the southern parcel did the purchase contract contain a provision making the sale contingent on the favorable outcome of a pending application to rezone the area highway-commercial. The entire property was bisected by a creek and ravine running through the middle parcel, preventing its development as a single entity. For that reason, the southern parcel was unaffected by the taking and did not figure in the award, except in two respects: its cost of acquisition was compared for evaluation of the taken land; and availability for placing signs visible to Thruway traffic, advertising any commercial exploitation of the other parcels, enhanced the before taking value of those parcels. The evidence was also undisputed that because of its varying topography, condition, and limited extent of U.S. Route 9 highway frontage at grade, only a portion of the land north of the creek (24.5 acres, including almost all of the 8.2 acres appropriated) was feasible for highway-commercial development, its highest and best use. It was also conceded by both parties that in addition to

direct damages for the property taken, claimant was entitled to consequential damages because the taking destroyed any effective access from the highway to the remainder of claimant's land north of the creek. Claimant's appraiser estimated direct and consequential damages at a total of some $206,000. He arrived at this figure by ascribing the most favorable highway-commercial use of the property to be an interstate highway quadrant motel-restaurant facility, citing sales of similar quadrant properties on the New York State Thruway as comparable sales, and by distinguishing between the usable and unusable portions of the property and assigning the bulk of valuation to the usable portion. This appraisal gave a before appropriation valuation of $9,500 per acre for the usable land and $350 per acre for the unusable land. The $9,500 per acre valuation was also consistent with the per acre acquisition price of the usuable portion of the southern parcel. The State's appraiser did not distinguish between usable and unusable land, and based his evaluation of the taken property at $1,000 per acre on three comparable sales, particularly claimant's purchase of the northern parcel. The balance of his recommendation was for consequential damages in the sum of $16,000, representing the cost to cure for building an access road into the affected property. The Court of Claims accepted the State appraiser's per acre evaluation and awarded direct damages of $8,300. Regarding consequential damages, however, the court rejected the State's estimate of the cost of construction of an access road, finding that the actual cost to cure was $90,200, and, therefore awarded consequential damages in that amount. At the outset, we agree with the position of the State that the award for consequential damages as formulated by the Court of Claims cannot stand. Since the court fixed the before taking value of the affected land at $1,000 an acre, it could not properly fix consequential damages on a cost to cure basis in excess of the aggregate before taking value of the remaining 47 acres (see *Goldsmith v State of New York*, 32 AD2d 607, affd 26 NY2d 899). There is, nevertheless, sufficient evidence in the entire record to sustain the judgment appealed from. Essentially, it appears clear to us that various factors establish that the before taking value of the appropriated and adjoining properties was greater than their acquisition prices. The uncontested evidence of drastic variations in terrain and usable condition within the taken and affected lands make it appropriate to take into account these distinctions in fixing value (*Shapiro v State of New York*, 61 AD2d 852, 853-854). Moreover, the State's appraiser's reliance on claimant's acquisition price for the northern parcel ignored three significant factors enhancing value, namely, (1) that the effect of the multi-acquisitions was to unlandlock that parcel; (2) that the merger of the three parcels permitted use of the southern parcel for sign advertising visible to vehicular traffic on the Thruway; and (3) that subsequently the land was rezoned to highway-commercial. Although claimant, an experienced land developer, may well have known of the likelihood of the zoning change when he entered into the agreements to purchase the northern and middle parcels, the evidence clearly supports claimant's argument that the sellers were unaware of that prospect and that, therefore, the purchase prices did not reflect an arm's length transaction between a knowledgeable seller and a knowledgeable buyer (*Plaza Hotel Assoc. v Wellington Assoc.*, 37 NY2d 273, 277-278). The supplemental appraisal submitted by claimant, based not on sales of interstate quadrant motel-restaurant properties, but upon an analysis of the State's comparable Route 9 highway-commercial sales in the vicinity, further supports a higher evaluation. Taking into account the previously discussed factors affecting value and the analysis of sales of comparable properties set forth in claimant's supplemental appraisal, we find that the before taking value of the usable portion of the appropriated land (7.1

acres) and of the usable portion of the remainder of the northern and of the middle parcels (15.1 acres) was $5,100 per acre. In making this determination, we accept the findings of the Court of Claims that the appropriated property did not have a specific highest and best use as an interstate highway quadrant motel-restaurant complex, and that the location of the northern parcel made it less valuable than the usable portion of the southern parcel. Aggregate direct damages are thus approximately $36,500. Regarding consequential damages, we agree with claimant's appraiser's opinion that the after taking value of the usable portion of the adjoining land was $1,000 per acre, and that the taking did not affect the value of the nonusable portions of these parcels. Consequential damages are thus fixed at $61,900. Accordingly, since in our view of the record, the aggregate award by the Court of Claims fairly and reasonably compensates claimant for his actual damages occasioned by the State's taking, its judgment should be affirmed. Judgement affirmed, without costs. Sweeney, J. P., Kane, Casey, Weiss and Levine, JJ., concur.