■ In the Matter of PAMELA AMUSEMENT CO., INC., Appellant, v FINANCE ADMINISTRATOR OF THE CITY OF NEW YORK et al., Respondents. — In a consolidated proceeding pursuant to article 7 of the Real Property Tax Law to review tax assessments upon certain real property for the tax years 1977/1978 and 1978/1979, the petitioner appeals from a judgment of the Supreme Court, Queens County (Kassoff, J.), dated December 1, 1981, which confirmed the assessments. Judgment affirmed, with costs. We find no basis for disturbing the judgment under review (see *People ex rel. MacCracken v Miller,* 291 NY 55). Although we find the city's use of the Jackson Theatre property as a comparable to be defective, *inter alia,* because its gross multiplier technique equates the Earle Theatre on the subject property with the Jackson Theatre and makes no specific adjustments, the weaknesses in the city's case do not excuse petitioner from meeting its burden of establishing that the assessments were excessive (see *50 Front St. Corp. v Dearborn,* 73 AD2d 1022). Petitioner's *real estate* appraiser, Sidney Panzer, stated in his appraisal report that: "The subject property was sold on August 14, 1978 at a price of $265,000. This sale made approximately six months after the last tax status date, in my opinion, is the best indication of value of the subject property. In my opinion, there were no changes in market conditions in the neighborhood during the period of the taxable status dates and the sale date. Additionally, I have considered the fact that the seller was the Brandt Theatre Organization, one of the largest independent movie theater chains. The sellers were thus knowledgeable people which lends major weight to the consideration of the sale". Petitioner's brief cites the case of *Plaza Hotel Assoc. v Wellington Assoc.* (37 NY2d 273, 277) for the proposition that it has long been held that: " 'the purchase price set in the course of an arm's length transaction of recent vintage, if not explained away as abnormal in any fashion, is evidence of the "highest rank" to determine the true value of the property at that time' ". However, in attempting to justify his 16.5% capitalization rate, petitioner's expert expressed various fears that actually bear on the Brandt Theatre Organization's need to protect its reputation and goodwill — factors which are personal, and not related to the real estate. Thus, Mr. Panzer testified: "I would have used [a capitalization rate] in this vicinity bearing in mind the type of tenancy and risk involved. You have a motion picture theatre — even though it is leased — showing X-rated films. Based upon my experience with motion picture theatres, any time you have a movie house that reverts from 'general public' films to 'X-rated' films, then as that theatre gets in trouble, the bar on the corner becomes a Go-Go bar. That's what is happening in the City. We are planning down with these. There is a risk involved with two prime tenants. Q Mr. Panzer, you stated the Brandt Theatre Company [*sic*] that was the seller here was a reputable theatre organization? A Yes. Q They leased to the operator? A Of the motion picture theatre, right. They had nothing to do with the tenants of the theatre * * * Q How long have those tenants been in occupancy? A The theatre operator was there since 1969. When it was leased, it was in operation showing general public films. The bar has been there for a number of years. When they converted to Go-Go dancing in the bar or X-rated films, I don't

know the exact date * * * Q Do you know why they sold this property? A Why? They felt that with the type of tenancy, especially since their theatre was showing X-rated films, *they wanted out*. They felt before it declines any more they wanted to sell this property. Q Are you saying this area is on the decline? A The area has changed over the years. In other words, back in the early 70's, it was a better area than in the latter 70's or the late 70's" (emphasis added). Further, the city's appraiser reported that the mortgage on the subject property "was in default and subject to foreclosure". Although, on cross-examination, the petitioner's attorney elicited that the city's appraiser did not know the number of payments in default, whether a foreclosure action had been commenced, whether a *lis pendens* had been filed or the financial strength of the Brandt Theatre Organization, the petitioner presented no evidence answering or clarifying those subjects. Under all the circumstances, Special Term did not err in holding that "this sale in and of itself is not determinative of the issue of market value". Gulotta, J. P., O'Connor, Weinstein and Rubin, JJ., concur.