**438 W. 19TH ST. OPERATING CORP., Petitioner, v METROPOLITAN OLDSMOBILE, INC., Respondent.**

Civil Court of the City of New York, New York County, January 4, 1989

### APPEARANCES OF COUNSEL

*Finkelstein, Borah, Schwartz, Altschuler & Goldstein, P. C.,* for petitioner. *Felcher & Felcher* for respondent.

### OPINION OF THE COURT

ALICE SCHLESINGER, J.

In this holdover proceeding, possession is no longer in contention. That has been settled between counsel. Rather, the issue left remaining is whether or not respondent tenant (Metropolitan) owes petitioner landlord (net lessee of the

building) (438 W. 19th Street) use and occupancy from June 1988 onward to the present and if so in what amount.

That issue is the subject of a motion by petitioner and cross motion by respondent. The facts are not in dispute. Instead where the parties differ is the significance of their contractual agreements and the legal conclusions to be drawn from all the circumstances. Thus summary judgment to one or the other does seem the appropriate resolution.

The facts follow. An original lease was entered into between predecessor parties for premises located at 438 West 19th Street. This was a 10-year lease ending on August 31, 1987. The respondent occupied the structure as a garage to repair and store automobiles. The parties agreed to extend the lease for a nine-month period to May 31, 1988. This date as well as other terms were contained in a multipaged extension agreement signed by both on June 26, 1987. The agreement allowed for further extensions at increased rent unless either party gave the other written notice 90 days prior to an expiration date of its wish to cancel the lease.

Petitioner did give such timely notice before the May 31st date but respondent, apparently needing more time to conclude its business, stayed on into June. In response, the landlord brought this holdover proceeding.

On June 13, while respondent still occupied the premises, the roof as well as other supporting structures caved in causing the building to virtually collapse. The following day the New York City Building Department issued a preemptory vacate order which stated in part: "It is ORDERED that the aforesaid building or part thereof remained vacant and unoccupied until such time as the building is declared safe by the department. This is a preemptory order, essential to public safety."

Apparently the order is still in effect. This means the respondent cannot clear out or go in for that matter until it is lifted. Under paragraph No. 3 of the extension agreement the monthly rent would increase to $13,333.33 effective June 1988. It is this amount per month that the landlord is demanding as use and occupation. To date Metropolitan has paid 438 West 19th Street $7,000 without prejudice to the rights of either party.

Counsel for petitioner argues his client is entitled to use and occupation in this amount based on three clauses in the original lease and the extension agreement. They are paragraphs No. 14 of the lease, Nos. 8 and 7 (d) of the extension.

Paragraph No. 14 is titled "No Rent Abatement" and states in effect that the tenant agrees to claim no monetary abatement or other compensation in the event of a business interruption or inconvenience from an inability to fully use the premises which results from some governmental order or the restoration of the premises after a destruction of the building "or from any other cause or reason."

Paragraph No. 8 entitled "Survival" incorporates, unless specifically modified, the clauses in the prior lease.

Paragraph No. 7 is entitled "Surrender" and the (d) portion concerns itself with the eventuality of a subtenant of Metropolitan holding over past the lease term. The thrust of it is that under these circumstances Metropolitan would be liable and would be so under a greatly increased (300%) rental amount together with costs, fees, and interest.

The landlord argues that these clauses are clear and unambiguous in its favor. They offer that paragraph No. 14 operates through the extension term because of paragraph No. 8. They maintain that the plain meaning of No. 14 is that the tenant remains liable when a governmental order or other calamity forces them to suspend their business which they urge is what happened here.

Finally they point to paragraph No. 7 (d) as proof that Metropolitan agreed to pay use and occupancy in the event of a holding over.

Counsel for respondent urges this court to reject petitioner's arguments. He argues that the paragraphs relied upon are clearly distinguishable to the existing facts. Specifically, paragraph No. 14 applies only to the conditions prevalent during the lease term and does not obligate a party after his tenancy is over. As to paragraph No. 7 (d), that solely applies to problems created when a subtenant of Metropolitan holds over past the lease term and is irrelevant to the case here as Metropolitan never sublet.

Further respondent urges that use and occupation is a statutory creation whose purpose is to compensate the landlord for the reasonable value of his property which the tenant is continuing to use and occupy. Therefore, if the premises have no reasonable value because of their condition or if the tenant has been unable to use and/or occupy the premises, there cannot be such an award as it would thwart the rationale and purpose of the law. I agree with both aspects of respondent's argument.

Real Property Law § 220 provides that a landlord can recover use and occupancy for the reasonable value of the premises and for use of those premises. It is the landlord's burden to prove the reasonable value.

In making a determination as to value the court has the obligation to appraise the actual value of the property taking into consideration whatever restrictions apply because of agreements between the parties *(Plaza Hotel Assocs. v Wellington Assocs.,* 55 Misc 2d 483) or to governmental decrees *(Beacway Operating Corp. v Concert Arts Socy.,* 123 Misc 2d 452) or other factors.

In *Plaza Hotel Assocs. (supra)* the court found a lesser value to the land because of a contract requirement that a hotel be maintained there. In *Beacway (supra)* the court found a decreased value to the premises because a city landmark designation relating to the interior usage of the theatre restricted its saleability and use.

How then can this court close its eyes to the instant situation where by virtue of the cave-in of its roof and the subsequent governmental order vacating the building for the safety of the public since June 13, 1988 and to the present, this property has had no marketable value?

Equally compelling is the simple fact that while the tenant may still be in technical possession, it has no actual use or occupancy of the premises again since June 13, 1988.

Because of these conditions, I do not see how one could conscientiously apply section 220 of the Real Property Law and make an award to the landlord.

As to the petitioner's arguments which relate to the lease clauses, I do not find them persuasive. I do agree that they are clear and unambiguous. However, while superficially relevant to the instant circumstances, they in fact clearly apply to other distinguishable situations.

Paragraph No. 14 specifically is denoted "No Rent Abatement". Rent is payment during the tenure of a lease and not for any period after its expiration. The survival clause of paragraph No. 8 doesn't help either as that again only relates to the term of the extension agreement which also has ended.

It is clear that the Legislature intended rent not be payable during a holding over since it enacted Real Property Law § 220 which establishes instead the equitable payment of use and occupancy. Further in the establishment of such use and occupancy, rent is merely one factor of many which the court

can consider in fixing value. *(Beacway Operating Corp. v Concert Arts Socy., supra,* and cases cited therein.)

Additionally, the rationale of paragraph No. 14 does not apply to a holding-over party who could not be expected to return to the premises at the conclusion of the governmental order or restoration.

Finally, I find paragraph No. 7 (d) only applies to a subtenant situation where the landlord can force his tenant to exert all efforts to oust the third party so as to avoid large payments and penalties himself. Certainly that is not the case here.

Therefore, for the reasons above discussed respondent's cross motion is granted, petitioner's motion is denied and Metropolitan is declared to be free of further liability to petitioner as long as it remains in possession while the city order is still in effect.