OPINION OF THE COURT
Ciparick, J.
Respondent, owner of the Ritz-Carlton Hotel at 112 Central Park South, New York City, leases the land underlying the hotel from appellants, owners of the land. When the parties deadlocked on the meaning of the lease term "appraised value of the land” during negotiations for the lease renewal, they agreed to seek a judicial interpretation of that term to settle their dispute. Appellants now challenge so much of the Appellate Division order which held that the appraiser must determine the value of the land as though vacant, without improvements, and subject to current zoning regulations. They argue that the court improperly directed the appraiser to disregard the effect of the hotel on the value of the land. Because the lease expressly provides that the appraiser value the land *719 as unimproved, without regard to the existence of the hotel, we affirm the order of the Appellate Division.
A.
The impasse over the meaning of "appraised value of the land,” a term critical for establishing the rental amount for the first 15-year renewal term, resulted from respondent’s interpretation that the lease required an appraiser to value the parcel of land as though vacant and unimproved, whereas under appellants’ construction the appraiser would consider the "benefit” any improvement "imparts” to the land, even if that improvement constitutes a legally nonconforming use.[1] The parties stipulated to resolve their dispute in court. Respondent thus proceeded with this action for declaratory and injunctive relief seeking a judgment declaring the meaning of the term "appraised value of the land,” and appellants counterclaimed seeking a declaration of the meaning of the word "land” as used in that phrase.[2] Thereafter, respondent moved for summary judgment on the complaint and appellants cross-moved for summary judgment on their counterclaim. Supreme Court denied respondent’s motion, granted appellants’ cross motion and dismissed the complaint.
Respondent appealed, and the Appellate Division reversed, on the law, granted respondent’s motion for summary judgment and denied appellants’ cross motion (see, New York Overnight Partners v Gordon, 217 AD2d 20). The Appellate Division ruled that the "clear and unambiguous terms of the *720 Lease [provide] that the 'appraised value of the land’ may he determined only by reference to the raw land designated as 112 Central Park South, exclusive of the building and all 'Improvements’ ” (id., at 29). While recognizing that land should be appraised for the best, most advantageous use, the court opined that in this case the land’s fair market value must be determined by the terms of the lease, taking into account any restrictions or encumbrances affecting the land. The court then directed the appraiser to determine the value of the land as if vacant and unimproved, subject to current zoning restrictions and contractual limitations, and to consider the effect of the lease on the value of the land (see, id., at 30). The court further granted appellants’ motion for leave to appeal to this Court and certified the question "Was the order of this Court, which reversed the order of the Supreme Court, properly made?” Because the order of the Appellate Division is final, we need not answer the certified question.
B.
In an effort to avoid the consequences of the legal determination that the land must be valued as if vacant and unimproved, appellants argue that the Appellate Division exceeded the scope of the limited review governing arbitration and appraisal proceedings by directing the appraiser to consider the land as "vacant, without improvements, and subject to current zoning restrictions” (217 AD2d 20, 30, supra) when the ground lease does not so dictate. While appellants do not challenge the Appellate Division’s determination that the term "land” as employed in the phrase "appraised value of the land” does not include improvements on the land, appellants nevertheless maintain that "it is a more advantageous use of the land for it to be valued as a parcel of property permitting usage of a building containing 152,000 square feet of floor space thereon, rather than as a theoretically vacant and unimproved parcel” (emphasis in original). Otherwise, appellants contend, the appraisal will reflect a parcel of land that is "much less valuable than economic reality dictates.” They further assert that current zoning regulations, which limit the size of new construction, are inapplicable because the owners of the land are legally entitled to continue the nonconforming use that is alleged to be the best and most advantageous use. Because the Appellate Division decision bars the appraiser from valuing the land at its highest and best use given its directive that the appraiser disregard the hotel, appellants claim that the decision should be reversed. We disagree.
*721 c.
When the language of the lease so dictates, appraisals must take into consideration all restrictions — including current zoning regulations — and encumbrances on the land, as well as the lease term (see, United Equities v Mardordic Realty Co., 8 AD2d 398, affd 7 NY2d 911; Plaza Hotel Assocs. v Wellington Assocs., 55 Misc 2d 483, affd 28 AD2d 1209, affd on opn at Special Term 22 NY2d 846, rearg denied 22 NY2d 972). Distilled to its essence, the argument pressed on this appeal amounts to nothing more than an attempt to enjoin appraisal of the "land” as raw and unimproved — the very term submitted for legal interpretation — on the theory that the Appellate Division decision precludes appraisal of land at its highest and best use.
Although there is no question that it is the appraiser who must determine which of the myriad factors are relevant to a particular valuation and how such factors impact the valuation of the parcel of land (see generally, Appraisal Institute, The Appraisal of Real Estate ch 4 ["The Valuation Process”], ch 12 ["Highest and Best Use Analysis”], ch 13 ["Land or Site Valuation”] [10th ed 1992]), without interference or direction from the court, this case required a threshold legal interpretation of the scope of the very subject of the appraisal. Thus, the Appellate Division determined that the drafters of the lease intended the term "land” to mean only the vacant and unimproved land, subject to contractual limitations and current zoning regulations, which presently would permit construction of a smaller building. This determination properly discharged the court’s legal function, rendering the matter ripe for appraisal.
The precedents firmly establish that in addition to construing disputed terms of a lease in advance of an appraisal proceeding, it is also within the province of the court to identify those factors the lease expressly designates or excludes in the valuation process.
For example, in Plaza Hotel Assocs. v Wellington Assocs. (supra), Supreme Court rejected the appraisers’ valuation premised on the land’s highest and best use, free of the lease restrictions (see, 55 Misc 2d 483, supra). The court indicated that such valuation violated the express language of the lease requiring that the appraisal account for the lease restriction that the land be used for a hotel, a less profitable use (see, Plaza Hotel, 55 Misc 2d, at 486-487; accord, United Equities v Mardordic Realty Co., supra, 8 AD2d, at 400 [lease specified *722 that fair market value of land be determined by reference to the renewal options and their terms contained in the lease and any restrictions affecting the land]; 185 Lexington Holding Corp. v Holman, 19 Misc 2d 521, affd 10 AD2d 569, affd 8 NY2d 965 [rental for renewal term based on value of land only, without improvements, under express terms of the lease]; see also, Madison Murray Assocs. v Perlbinder, 215 AD2d 204, 204-205).
Similarly, in Ruth v S. Z. B. Corp. (2 Misc 2d 631, 636-637, affd 2 AD2d 970), the court ruled that because the lease unambiguously provided that the land be valued "free of lease,” the drafters could not have intended that the arbitrator "might give heed to the very lease which so declared” otherwise and ruled that the land must be valued without considering the lease restrictions.
Consistent with these cases is the determination by the Appellate Division that the language of the lease unequivocally excludes the hotel from the valuation of this parcel of land — a determination not challenged on this appeal — and that the land’s valuation is subject to current zoning restrictions, contractual limitations and the lease itself. No less significant is the fact that this determination does not infringe on the appraiser’s discretion and judgment nor does it foreclose a valuation of the land for its highest and best use under different circumstances. Pursuant to the express terms of the lease, the parties did not intend the land to be appraised for its highest and best use to establish the rental rate for the renewal term.
That the unambiguous terms of the lease — dictating that a prime parcel of land in midtown Manhattan be appraised as vacant and unimproved for purposes of setting the rental rate for the next 15 years — strike appellants, the successors-in-interest to the original lessor and fee owner of the land, as a poor bargain 33 years after execution of the lease does not constitute a basis for recasting the agreement under the guise of judicial interpretation. Indeed, as fee owners of the land, the lessors will acquire title to the hotel structure and all "Improvements” on the land upon expiration of the last renewal option; it is not until then that the lessors will be poised to reap the economic advantages of the "legally nonconforming use.”
Accordingly, the order of the Appellate Division insofar as appealed from should be affirmed, with costs, and the certified question not answered upon the ground that the order appealed from is final and the certified question is thus unnecessary.
*723 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith and Levine concur.
Order, insofar as appealed from, affirmed, etc.

. Article I, § 1.03 of the lease defines the demised premises as the land acquired by the lessor as described in Article II, § 2.01. As pertinent, Article II, § 2.01 describes the subject land as "[a]ll that certain plot, piece or parcel of land, without the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan * * * [s]aid Premises now be known as and by the Street Number 112 Central Park South”. "Improvements” is defined in Article I, § 1.04 as "[a]ny and all buildings being premises known and described as 112 Central Park South * * * and the structures and improvements now or at any time hereafter erected, constructed or situated upon said premises or any part thereof. The Improvements shall include such buildings, structures and improvements and the foundations and footings thereof * * * excepting the land and Demised Premises hereinafter described in Article II, Section 2.01.”

. We note that the lease contemplates arbitration when the parties fail to agree on the appraised value of the land as a "matter of fact or of value” (Lease Agreement, art XXX, § 30.02). Because the parties submitted the dispute over the legal meaning of the term "land” to the court, this case does not implicate the nature or scope of an arbitration or appraisal proceeding (cf., Matter of Dimson [Elghanayan], 19 NY2d 316, 325).