In the Matter of the CITY OF NEW YORK, Appellant-Respondent, Acting for and on Behalf of the New York City Housing Authority, Relative to Acquiring Title to Real Property in the Borough of Manhattan, Selected as a Site for Public Housing Project Known as James Madison Houses. FIRST ELEPHANT ESTATES, INC., et al., Respondents; LA HERMOSA CHURCH, Respondent-Appellant.

First Department, December 4, 1962.

*Irving Genn* of counsel (*Seymour B. Quel* with him on the brief; *Leo A. Larkin, Corporation Counsel*), for appellant-respondent.

*George Bergen* of counsel (*Harold L. Leddy* and *Morris Eder* with him on the brief; *Skinner & Bermant, Leddy & Raber,* attorneys), for First Elephant Estates, Inc., and another, respondents.

*Samuel Goldstein* of counsel (*M. Robert Goldstein* with him on the brief; *Samuel Goldstein & Sons,* attorneys), for 67–69 East 109 Street Corp., respondent.

*Nathan L. Goldstein* of counsel (*Robert J. Randell* with him on the brief; *Nathan L. & Joseph Z. Goldstein,* attorneys), for Israel Brod, respondent.

*Samuel H. Grant* of counsel (*David Silberman* with him on the brief; *Silberman & Grant,* attorneys), for Ada Mancebo, respondent.

*Samuel H. Grant* of counsel (*David Silberman* with him on the brief; *Silberman & Grant,* attorneys), for respondent-appellant.

BREITEL, J. P. The city appeals from six awards in condemnation, and one of the claimants cross-appeals. At issue are damage parcels taken in connection with the development of a low-rent, Federally-aided housing project in East Harlem in this city, known as James Madison Houses. Title vested on June 2, 1958, and values are to be determined as of that date (Administrative Code of City of New York, § B15–36.0; *Matter of Board of Water Supply of N. Y.,* 277 N. Y. 452). Three of the awards should be reduced and three should be affirmed. The properties will be discussed seriatim.

### DAMAGE PARCEL 8

Involved is a three-story and basement brick building converted to a church in 1941. Before that it had been a bathhouse, and still before that it had been an old-law tenement house. The principal issue argued is whether the building was a specialty entitled to be valued by determining reproduction value less depreciation rather than market value (*Matter of City of New York* [*Maxwell*], 15 A D 2d 153, 171–172). There are cross appeals.

Claimant argues that it was a specialty, while the city argues that it was not. Reproduction value as a church would yield a high value, estimated by claimant at just over $120,000, including its appraisal of the land. Market value as a convertible structure, the city argues, justifies only a value of $51,200, taking the estimate of claimant's expert on cross-examination of rental value as a base.*

Special Term fixed the value at $65,300, but, as with the other parcels discussed, did not elaborate on the supporting reasons for its conclusion. It is concluded that the building was not a specialty, and would not justify an award in excess of $52,000.

The very fact of the several conversions of this building suggests that it was not a specialty. The test, as stated by Mr. Justice STEUER in the *Maxwell* case (*supra*, p. 172), is that for

* The range of expert appraisals was $18,000 to $127,000.

a building to be a specialty it must be "truly unique so that only the owner would have use for it, then there can be no buildings like it, no comparable transactions, and no way for him to replace except by rebuilding". (See, also, McMichael, Appraising Manual, ch. 25, especially pp. 347–348.) Moreover, it is evident that any similar old-law tenement could be, at like expense, converted into a church similar to this one (4 Nichols, Eminent Domain [3d ed.], § 12.32, especially p. 223). Or, this building, with relatively little expense, could be reconverted into a tenement or commercial building. Still further, unlike some grand edifice or cathedral, this building could very well be used as a place of worship by many other religious denominations. There was testimony that there were many similar churches in the area. One thing is clear: no one would choose to reproduce this church at great cost (let alone $120,000), as often as persons might convert a tenement house into a church like this. However viewed, this building, as an entire structure, in its past, present, or future, if not taken in condemnation, was not unique and was therefore not a specialty.

Claimant's expert, on cross-examination, valued the gross rental income of the building, if it were turned to a non-church use, at $6,640 per annum. That figure, the only alternative to the city's figures in this record, is accepted. He estimated expenses at $1,776 per annum. Using the city's over-all capitalization rate of 9.5% (the only one in the record) the value of the property, put out at rental, would be $51,200. Thus, the claimant is given largely the benefit of his own appraiser's estimate of net income rather than the much lower estimate by the city expert.

Consequently, the award for Damage Parcel 8 should be modified by reducing it to $52,000.

DAMAGE PARCEL 14

This was a six-story tenement house with stores. Special Term made an award of $51,000. The city argues that it was excessive.

Generally, with respect to income-earning property, held for income, the net income is, in ordinary cases, the surest index of value (*People ex rel. Gale* v. *Tax Comm.*, 17 A D 2d 225 [EAGER, J.]; *Matter of City of New York* [*Maxwell*], 15 A D 2d 153, 161, supra; *Matter of City of New York* [*School of Ind. Arts*], 2 Misc 2d 403, 408 [EDER, J.]; McMichael, *op. cit.*, ch. 11). Of course, it is always open to proof that the net income is an unreliable index, because for indicated reasons the income is too low or too high in determining market value, but the burden ordinarily is on the

one who asserts the unreliability. And, too, it is always relevant to show that valuable land is poorly improved, and therefore the low income does not reflect the true value of the land. (See 4 Nichols, *op. cit.*, § 12.312 *et seq.*; 1 Orgel, Valuation Under Condemnation [2d ed.], § 176 *et seq.*)

The gross rents here were about $11,469.* The city estimate of expenses is $7,515. This includes a management expense, and claimant conceded such an expense on its own appraisal. This leaves a net annual income of $3,954. Capitalizing this income at an over-all 10% rate to which the expert appraisals implicitly approximate, without recomputing the split capitalization rates evidently used by the experts for land and building, yields a value of $39,540.** The separate values assigned by the several experts among different lots in the block were not divergent, so that the over-all rate may be fairly applied.

The claimant's expert found the annual expenses to be $6,830, which, if deducted from the actual rents, yields a net income of $4,639. Such net income would capitalize at a value of $46,390. On the other hand, there was a prior sale of this property in 1953 at $33,000, according to claimant, or at $29,000, if the tax stamps attached to the documents are credited. Such prior sale is entitled to significant, even if not overbearing, consideration (Administrative Code, § B15–16.0; *Matter of City of New York* [*Marshall*], 16 A D 2d 570, 576; s. c. 8 A D 2d 365, 366; *Matter of City of New York* [*Maxwell*], 15 A D 2d 153, 162, *supra*).

Giving consideration to the conflicting estimates of future net income by the experts, and according weight to the prior sale which occurred five years before the vesting date, the award should be reduced.

Consequently, the award for Damage Parcel 14 should be modified by reducing it to $40,000.

### DAMAGE PARCEL 24

This too, involves a six-story tenement house, with stores. Special Term made an award of $55,000. The city argues that it was excessive.

---

* The assessed value was $34,500. The property was subject to a record mortgage of $30,000. The range of expert appraisals was $36,000 to $63,000.

** While, for convenience, it is useful to use an over-all rate of capitalization, it is true that an over-all rate may be vulnerable unless it is based upon separate capitalization rates computed by one or another residual method on land and building. Thus one makes sure that an improper distortion is not introduced because of disproportionate values assignable to land and building. (See 19 N. Y. Jur., Eminent Domain, § 179, and cases cited; American Inst. Real Estate Appraisers, The Appraisal of Real Estate [3d ed], ch. 19, esp. p. 292 *et seq.*; McMichael, *op. cit.*, ch. 12.)

One looks to the actual rents as a reliable index to future rents (*People ex rel. Gale* v. *Tax Comm.*, 17 A D 2d 225, *supra*, and cases cited). The gross annual rents as given by claimant were $12,190.* If one deducts claimant's expenses, as he computes them, at roundly $7,300, the net annual income is $4,890. Capitalizing this income at 10% yields a value of $48,900. Claimant would try to raise the value by utilizing split capitalization rates for land and building (6% for the land and 11% for the building), and claiming a much greater value for the land. This parcel is in the middle of the block. Certainly, there was no evidence to justify considering this land more valuable in proportion to the building on it than the neighboring lands. Actually, claimant's expert testified to using an over-all rate of 9.12%. One city expert testified to using an over-all rate of 10.7%. Thus, using the over-all rate of 10% which approximates the results in the other parcels in this condemnation would seem appropriate.

Consequently, the award for Damage Parcel 24 should be modified by reducing it to $49,000.

### DAMAGE PARCEL 22

This parcel involves a five-story tenement house, with stores. Special Term made an award of $49,500. The city argues that the award is excessive.

The city's principal argument is that using multiples of gross rent does not justify so high a value of the award. While multiples of gross rent may be a useful rule of thumb when better information is not available, it is the less significant as compared with capitalizing net income, which is not otherwise shown to be vulnerable or unreliable. No doubt, multiples of gross income reflect value when it is known that the gross income should throw off a certain net income. In short, one may use multiples of gross income in fixing value when one cannot know what the net income is; it is a secondary substitute as a guide, but it is, at the same time, always useful as a check. (See e.g., 1 Orgel, *op. cit.*, §§ 177–179; American Inst. Real Estate Appraisers, *op. cit.*, pp. 328–330; cf., also, Emergency Housing Rent Control Law, § 4, subd. 4, par. [a], cl. [1], subcl. [iii]; L. 1946, ch. 274, as last amd. by L. 1961, ch. 337; McKinney's Unconsol. L., § 8584, subd. 4, par. [a], cl. [1], subd. [iii].)

Using net income figures,** but not crediting a deduction for apartment vacancies, hardly appropriate to a rent-controlled

---

* The assessed value was $37,000. The property was subject to a record mortgage of $34,500. The range of expert appraisals was $38,000 to $66,000.

** The assessor value was $34,000. The property was subject to a record mortgage of $30,000. The range of expert appraisals was $38,000 to $60,000.

building of this kind in 1958 (*Matter of City of New York* [*Maxwell*], 15 A D 2d 153, 162–163, *supra*), a value of about $45,000 is reached. This is not a sufficient variation from the award to merit disturbance.

Consequently, the award for Damage Parcel 22 should be affirmed.

### DAMAGE PARCEL 16

This was a two-story commercial building. The award was $28,000. The city attacks the award as excessive, arguing that the land value must have been fixed too high. This is not material so long as there was no evidence to exclude this property from the ordinary rules governing income property held for income, and the capitalized net income justifies the over-all amount of the award.* This is the fact. The circumstance that the property sold for only $12,000 in 1952 is significant, but so long as it is clear enough that it was capable of yielding the net income indicated, it is not controlling.

Consequently, the award for Damage Parcel 16 should be affirmed.

### DAMAGE PARCEL 55

This was a five-story tenement house, with stores. The award was $34,500. The city, in arguing excessiveness, speaks again of multiples of gross rents.**

An analysis of net income would support the award, especially if properly disputed deductions for apartment vacancies by the city expert are eliminated. Then the award falls closely in line with the claimant's expert appraisal and the city's expert appraisal as adjusted. Any difference does not merit disturbance of Special Term's determination.

Consequently, the award for Damage Parcel 55 should be affirmed.

In each of the parcels with which this case is concerned the largest significance was given to the capitalization of net income. This is not because that is the sole factor or even the weightiest in all cases. It is that, as already noted, it is the "surest index" of value in the ordinary case of income-producing property, held for income. Assuredly, this is so in the absence of a showing that the income is subject to distortion in reflecting value,

---

* The assessed value was $14,000. There were no mortgages. The range of expert appraisals was $18,000 to $40,000.

** The assessed value was $21,000. The property was subject to a record mortgage of $17,500. The range of expert appraisals was $24,000 to $43,000.

or that the land is inadequately improved, or that some other circumstance explains why the rate of income is not indicative of market value based on current appropriate rates of return.

The rate of capitalization itself should be, of course, a reflection of the market rate, that is, what the investment market requires in return from a property of the age, kind, condition, and location as the subject property. As such, it is a matter for proof and argument. (1 Orgel, *op. cit.*, § 185; *Matter of City of New York* [*Seventh Ave.*], 196 App. Div. 451, 460–461.)

The allocation of a greater significance to one or more factors in one case is no indication that a different allocation will not be appropriate in another case. The allocation always depends upon the presentation of facts which illuminate or dictate the greater relevance or significance of the several factors used. The ultimate criterion is which better reflects, or rather, approaches true value. In the case of income property it is which factors are most probative of the future income and future rate of return demanded by the investment market. At best, there is no precision, although precise-sounding mathematical formulas are used. At worst, there is no mystery, although there are pragmatic efforts at prognostication.

Accordingly, the award for Damage Parcel 8 should be modified, on the law and the facts, by reducing it from $65,300 to $52,000, that for Damage Parcel 14 by reducing it from $51,000 to $40,000, that for Damage Parcel 24 by reducing it from $55,000 to $49,000, in each instance with costs to city appellant; and the awards for Damage Parcels 22, 16 and 55 should be affirmed, with costs to claimants-respondents.

VALENTE, McNALLY, STEVENS and EAGER, JJ., concur.

Decree unanimously modified, on the law and the facts, by reducing the award for Damage Parcel 8 from $65,300 to $52,000, that for Damage Parcel 14 by reducing it from $51,000 to $40,000, that for Damage Parcel 24 by reducing it from $55,000 to $49,000, in each instance with costs to city appellant; and the awards for Damage Parcels 22, 16 and 55 affirmed, with costs to claimants-respondents. Settle order on notice.