■ In the Matter of ZIPEL REALTY CORP. et al., Appellants, v FINANCE ADMINISTRATION et al., Respondents.—In consolidated tax certiorari proceedings to review the assessments on certain real property for the tax years 1972-1973 through 1977-1978 (the property was owned by petitioner Heyman & Co. for the tax years 1972-1973 through 1975-1976 and is currently owned by petitioner Zipel Realty Corp.), petitioners appeal from a final judgment of the Supreme Court, Kings County, dated December 14, 1977, which (1) sustained the assessments on the property designated on the land map of the Borough of Brooklyn as Block 2925, Lot No. 37 (1039 Grand Street) and (2) reduced the assessments on the property designated on said land map as Block 2925, Lot No. 1 (1041 Grand Street), in an allegedly inadequate amount. Final judgment reversed, on the law and the facts, without costs or disbursements, and proceedings remanded to Special Term for further proceedings consistent herewith. The record reveals that the subject property was sold on January 21, 1976 for $21,000 in cash over an existing first mortgage balance of $124,853.84. In addition, the purchaser assumed responsibility for $11,097.24 in unpaid meter charges and agreed to take title subject to $58,397.07 in interest, real estate tax arrears, open sidewalk assessments and arrears in water and sewer charges. The true purchase price also included interest and penalties in unspecified amounts due to the City of New York on said arrears in real estate taxes, sidewalk assessments, and water and sewer charges. In our opinion, Special Term erred by excluding evidence of the arm's length sale in 1976 of the subject property. Unless explained as abnormal, such evidence should be accorded great weight in determining the true value of the property as of the time of

the sale (see *Plaza Hotel Assoc. v Wellington Assoc.*, 37 NY2d 273, 277; *Matter of Woolworth Co. v Tax Comm. of City of N. Y.*, 20 NY2d 561, 565). Contrary to Special Term's assertion, the proffered purchase price included open and unpaid meter charges as of the date of sale. Moreover, the exact amounts of interest and penalties due to the City of New York as of the sale date are susceptible to objective determination and thus do not render the sale price a matter of "speculation". Therefore, we remit this matter to Special Term for such further proceedings as will enable the court to accord suitable weight to the evidence of the arm's length sale of the subject property in its assessment of value. It should be noted, additionally, that even had the sale evidence been accorded proper weight, we would have found it necessary to remit this matter to Special Term for clarification of certain facets of its decision. First, the court's decision does not reveal the method by which the $96,945 figure for average yearly net income was achieved on the basis of the data in the New York City Auditor's "Statement of Net Adjusted Income". Second, Special Term's decision states the actual collection of rent for 1973 as $263,611, as compared with the figure of $236,611 in the city auditor's statement. We are unable to determine (1) whether the apparent error is typographical or substantive, (2) whether Special Term employed the city audit figures for actual collection of rent or the petitioner's expert's figures for "Gross Rents" or for "Net Effective Rentals" for the tax years 1973-1974, 1974-1975 and 1975-1976, and (3) the method by which such figures were applied to determine income for said tax years. Furthermore, we are uncertain of the basis in the record for the conclusion that 7½% represents a "fair" rate of return for the land. Finally, we note that the capitalization rate for buildings employed by Special Term makes no apparent provision for a recapture rate and we are unable to discern what provision, if any, Special Term made for recapture in its determination of value. Titone, J. P., Lazer, Margett and Martuscello, JJ., concur.