■ In the Matter of ANSACA REALTY CO., INC., Appellant, v FINANCE ADMINISTRATION OF THE CITY OF NEW YORK et al., Respondents.—In consolidated proceedings to review tax assessments on five separate parcels of real property for the years 1975-1976 and 1976-1977, petitioner appeals, as limited by its brief, from so much of a final judgment of the Supreme Court, Kings County, entered May 23, 1978, as reduced (allegedly insufficiently) the assessments as to Block 2156, Lots Nos. 5 and 23 and Block 2160, Lot No. 18 and confirmed the assessments as to Block 2156, Lot No. 1 and Block 2160, Lot No. 20, after a nonjury trial. Final judgment modified, on the law and facts, by deleting therefrom the first decretal paragraph thereof and substituting therefor a provision granting the petitions to the extent of reducing and fixing the assessments, as follows:

### 39-47 SOUTH 11TH STREET - BLOCK 2156, LOT 1, BROOKLYN

| YEAR | LAND ASSESSMENT | BUILDING ASSESSMENT | TOTAL ASSESSMENT |
|---|---|---|---|
| 1975-1976 | $ 7,840 | — | $ 7,840 |
| 1976-1977 | 7,840 | — | 7,840 |

### 479 WYTHE AVENUE - BLOCK 2156, LOT 5, BROOKLYN

| YEAR | LAND ASSESSMENT | BUILDING ASSESSMENT | TOTAL ASSESSMENT |
|---|---|---|---|
| 1975-1976 | $ 5,250 | $ 10,150 | $ 15,400 |
| 1976-1977 | 5,250 | 10,150 | 15,400 |

### 55-65 SOUTH 11TH STREET - BLOCK 2156, LOT 23, BROOKLYN

| YEAR | LAND ASSESSMENT | BUILDING ASSESSMENT | TOTAL ASSESSMENT |
|---|---|---|---|
| 1975-1976 | $ 28,000 | $133,000 | $161,000 |
| 1976-1977 | 28,000 | 133,000 | 161,000 |

52-58 SOUTH 11TH STREET - BLOCK 2160, LOT 18, BROOKLYN

| YEAR | LAND ASSESSMENT | BUILDING ASSESSMENT | TOTAL ASSESSMENT |
|------|-----------------|---------------------|------------------|
| 1975-1976 | $ 10,150 | $ 67,550 | $ 77,700 |
| 1976-1977 | 10,150 | 67,550 | 77,700 |

40-48 SOUTH 11TH STREET & 52 SOUTH 11TH STREET-
BLOCK 2160, LOT 20, BROOKLYN

| YEAR | LAND ASSESSMENT | BUILDING ASSESSMENT | TOTAL ASSESSMENT |
|------|-----------------|---------------------|------------------|
| 1975-1976 | $ 3,920 | — | $ 3,920 |
| 1976-1977 | 3,920 | — | 3,920 |

As so modified, final judgment affirmed insofar as appealed from, with costs to the appellant. The various parcels involved in this case are as follows: Block 2156, Lot No. 1—A vacant parcel of land containing 6,820 square feet and utilized for parking. Block 2156, Lot No. 5—A two-story brick industrial building. Block 2156, Lot No. 23—A two-, three- and six-story brick industrial loft building. Block 2160, Lot No. 18—A three- and six-story brick industrial building. Block 2160, Lot No. 20—A 3,880 square foot parcel of vacant land utilized for off-street parking. According to the petitioner's expert, the improvements on the property were constructed in 1898 and it "consists of three brick industrial loft buildings on South 11th Street, Wythe Avenue and Berry Street in the Williamsburgh section of the Borough of Brooklyn." He went on to say in his appraisal report that: "The subject area is one which was developed many years ago. The improvements were primarily in the residential and industrial land use categories. The residential structures were generally 4 and 5 story brownstone or brick structures. Over the years, the physical condition of these structures deteriorated. Numerous buildings exist in a vacant and vandalized condition. Some have open doorways and missing window frames, others are boarded or sealed, while still others have been demolished. These properties exist along South 8th, 9th, and 10th Streets, Berry Street, Bedford Avenue, Driggs Avenue and Division Avenue. Land areas to the south side of Division Avenue have been cleared as part of the Williamsburgh Urban Renewal Project. High rise subsidized rental apartment buildings have been built. In terms of the industrial or commercial space market, the area was for many years under the favorable influence of the Brooklyn Navy Yard and the F. & M. Schaefer Brewing Company. The brewery [buildings] located on Kent and Wythe Avenues between Division Avenue and Broadway, were vacated by Schaefer. Although the buildings have been sold, they are presently vacant. Some land is being used by the U.S. Trucking Company. The predominance of industrial uses, in the immediate subject periphery, are generally of smaller size than the subject property. The east and west sides of Wythe Avenue contain these uses, while the residential uses are to the east of Wythe. A number of industrial properties have been demolished. Physical examination of the area reveals that industrial buildings have been demolished along Wythe Avenue, Berry Street, Division Avenue, and the entire

blockfront of South 10th Street—between Wythe and Berry Street. Similar to the subject, existing industrial properties throughout the area reveal the existence of vacant space." The city's expert was of a different view, finding that "Real estate developments in the immediate vicinity of the property under appraisement such as the aforementioned housing developments should qualify the subject property an asset to the area. Since it is within a short distance from the developments a good labor market is created for the tenants of the appraised buildings, allowing for less vacancies. Kent Avenue, a main route to the expressways and bridges is within a one block distance." The city's audit of petitioner's books reported a 1975 rental income of $167,804. For 1976, however, the audit shows that the rental income had declined to $137,389. The city's expert relied exclusively on the income capitalization approach. He found a gross rental income of $155,000 from which he deducted $3,000 for vacancies, arriving at an effective gross income of $152,000. Thus, despite the obviously deteriorating nature of the area, the vacancy factor employed was only 2%. Petitioner's expert also reported that in an arm's length transaction the property was sold on February 3, 1976 for the sum of $135,000. The report of the city's expert, however, made no mention of the sale and at the trial this expert stated that he disregarded the sale. Petitioner's expert testified that in February, 1976 (the month of the sale of the subject property), 36,400 square feet of the premises were vacant; this represented about 21% of the property. In January, 1977 there were 30,000 square feet of vacant space—about 17.1% of the property. In his testimony, the city's expert conceded that if he had been aware of the 21% vacancy rate he would have used it instead of the 2% he actually used. The total of the assessments which the proceedings brought under review were as follows:

TOTAL

| | | |
|---|---|---|
| 1975/1976 | Land | $ 78,800 |
| | Building | 464,000 |
| | Total | $ 542,800 |
| | | |
| 1976/1977 | Land | $ 78,800 |
| | Building | 436,500 |
| | Total | $ 515,300 |

The city's expert testified that he appraised the subject property overall at $436,800 for each of the tax years 1975/1976, 1976/1977 and that this was approximately $106,000 below the assessment for the first year and about $80,000 below the assessment for the second year. The report of petitioner's expert states in part:

FINAL ESTIMATE OF MARKET VALUE

| | | |
|---|---|---|
| As of January 25, 1975 | Land | $ 53,000. |
| | Building | 172,000. |
| | Total | $ 225,000. |
| | | |
| As of January 25, 1976 | Land | $ 53,000. |
| | Building | 147,000. |
| | Total | $ 200,000. |

As was noted previously, Block 2156, Lot No. 1, and Block 2160, Lot No. 20, are unimproved parcels. Special Term confirmed the assessments on those parcels but reduced the assessments on the three remaining improved parcels. The "Grand Total" of the assessments as fixed by Special Term was $379,800, broken down as follows for each of the two years:

### 39-47 SOUTH 11TH STREET - BLOCK 2156, LOT 1, BROOKLYN

| YEAR | LAND ASSESSMENT | BUILDING ASSESSMENT | TOTAL ASSESSMENT |
| --- | --- | --- | --- |
| 1975-1976 | $ 11,200 | — | $ 11,200 - Confirmed |
| 1976-1977 | 11,200 | — | 11,200 - Confirmed |

### 479 WYTHE AVENUE - BLOCK 2156, LOT 5, BROOKLYN

| YEAR | LAND ASSESSMENT | BUILDING ASSESSMENT | TOTAL ASSESSMENT |
| --- | --- | --- | --- |
| 1975-1976 | $ 7,500 | $ 14,500 | $ 22,000 |
| 1976-1977 | 7,500 | 14,500 | 22,000 |

### 55-65 SOUTH 11TH STREET - BLOCK 2156, LOT 23, BROOKLYN

| YEAR | LAND ASSESSMENT | BUILDING ASSESSMENT | TOTAL ASSESSMENT |
| --- | --- | --- | --- |
| 1975-1976 | $ 40,000 | $190,000 | $230,000 |
| 1976-1977 | 40,000 | 190,000 | 230,000 |

### 52-58 SOUTH 11TH STREET - BLOCK 2160, LOT 18, BROOKLYN

| YEAR | LAND ASSESSMENT | BUILDING ASSESSMENT | TOTAL ASSESSMENT |
| --- | --- | --- | --- |
| 1975-1976 | $ 14,500 | $ 96,500 | $111,000 |
| 1976-1977 | 14,500 | 96,500 | 111,000 |

### 40-48 SOUTH 11TH STREET & 52 SOUTH 11TH STREET- BLOCK 2160, LOT 20, BROOKLYN

| YEAR | LAND ASSESSMENT | BUILDING ASSESSMENT | TOTAL ASSESSMENT |
| --- | --- | --- | --- |
| 1975-1976 | $ 5,600 | — | $ 5,600 - Confirmed |
| 1976-1977 | 5,600 | — | 5,600 - Confirmed |

Special Term thus reduced the total 1975/1976 assessment from $542,800 to $379,800 and the total 1976/1977 assessment from $515,300 to $379,800. Special Term's decision does not mention the sale of the property for $135,000 nor is it clear by what computational means the court derived a net income of "$69,205" (which it capitalized at 18.29%—using the city expert's 9.8% return rate and 8.49% average tax rate, and no apparent

return for depreciation).* These shortcomings require a reversal under *Matter of Lane Bryant v Tax Comm. of City of N. Y.* (21 AD2d 669, affd 19 NY2d 715) and *Matter of Zipel Realty Corp. v Finance Admin.* (69 AD2d 837). In *Lane Bryant,* the Appellate Division, First Department declared (p 670): "An actual sale of the subject property at arm's length is of course the very best of evidence, because directly reflective of market value, if recent in time, and not explained away as abnormal in any fashion (cf. *Matter of 860 Fifth Ave. Corp. v. Tax Comm.,* 8 N Y 2d 29, 31; *Matter of City of N.Y. [Madison Houses],* 17 A D 2d 317, 321)." In *Zipel* this court reversed a final judgment of Special Term and remitted for further proceedings, holding (pp 837-838): "In our opinion, Special Term erred by excluding evidence of the arm's length sale in 1976 of the subject property. Unless explained as abnormal, such evidence should be accorded great weight in determining the true value of the property as of the time of the sale (see *Plaza Hotel Assoc. v Wellington Assoc.,* 37 NY2d 273, 277; *Matter of Woolworth Co. v Tax Comm. of City of N.Y.,* 20 NY2d 561, 565). * * * Therefore, we remit this matter to Special Term for such further proceedings as will enable the court to accord suitable weight to the evidence of the arm's length sale of the subject property in its assessment of value. It should be noted, additionally, that even had the sale evidence been accorded proper weight, we would have found it necessary to remit this matter to Special Term for clarification of certain facets of its decision. First, the court's decision does not reveal the method by which the $96,945 figure for average yearly net income was achieved on the basis of the data in the New York City Auditor's 'Statement of Net Adjusted Income'. Second, Special Term's decision states the actual collection of rent for 1973 as $263,611, as compared with the figure of $236,611 in the city auditor's statement. We are unable to determine (1) whether the apparent error is typographical or substantive, (2) whether Special Term employed the city audit figures for actual collection of rent or the petitioner's expert's figures for 'Gross Rents' or for 'Net Effective Rentals' for the tax years 1973-1974, 1974-1975 and 1975-1976, and (3) the method by which such figures were applied to determine income for said tax years. Furthermore, we are uncertain of the basis in the record for the conclusion that 7 ½% represents a 'fair' rate of return for the land. Finally, we note that the capitalization rate for buildings employed by Special Term makes no apparent provision for a recapture rate and we are unable to discern what provision, if any, Special Term made for recapture in its determination of value." However, a remittance of the instant matter to Special Term is unnecessary because there is sufficient evidence in the record to enable us to make a final determination. Accordingly, giving appropriate weight to the arm's length bona fide $135,-000 sale of the subject property on February 3, 1976, the poor condition of the property, the high vacancy rates, the generally deteriorated condition of the neighborhood, the trends indicated thereby, the nature and quality and depth of the respective expert testimony and the qualifications and experience of the parties' experts, we have reduced by 30% the valuation fixed by Special Term for each year in issue. Accordingly, the "Grand Total" of $379,800 for each year set forth by Special Term must be reduced to $265,860. The $135,000 sale does not call for a more drastic reduction in assessed value than $265,860 because petitioner's expert himself, though

---

* Petitioner's expert reported: "It is the opinion of the appraiser that during the years under review, the subject improvements had a remaining economic life of 15 years. A recapture rate of 6.67% results."

reporting the $135,000 sale, would reduce the assessments only to $225,000 for the 1975-1976 tax year and $200,000 for the 1976-1977 tax year. Thus petitioner's expert set a floor on his proposed reduction and we need not go below that level. However, neither are we required to descend to and adopt the very level proposed by that expert, a level reached by utilization of various estimates and projections in his income capitalization method. Thus, we conclude that a reduction of 30% of the valuations fixed by Special Term for each year in issue will give appropriate weight to the $135,000 sale, is within the range of the evidence and gives due consideration to the quality of the evidence. Titone, J. P., Lazer, Mangano and O'Connor, JJ., concur.