SHORE HAVEN APARTMENTS NO. 6, INC., APPELLANT, v COMMISSIONER OF FINANCE OF THE CITY OF NEW YORK et al., Respondents.

In the Matter of FRED C. TRUMP (OCEAN TERRACE), Appellant, v COMMISSIONER OF FINANCE OF THE CITY OF NEW YORK et al., Respondents.

SOUTHAMPTON APARTMENTS, Division of SHORE HAVEN APARTMENTS NO. 3, INC., Appellant, v COMMISSIONER OF FINANCE OF THE CITY OF NEW YORK et al., Respondents.

Second Department, April 18, 1983

#### APPEARANCES OF COUNSEL

*Demov, Morris, Levin & Shein* (*Scott E. Mollen* and *Eugene J. Morris* of counsel), for appellants.

*Frederick A.O. Schwarz, Jr., Corporation Counsel* (*Harvey I. Shiff* and *Leonard Olarsch* of counsel), for respondents.

#### OPINION OF THE COURT

LAZER, J.

In these consolidated tax certiorari proceedings covering three successive tax years commencing 1977-1978, peti-

tioners seek review of the assessment of three apartment house properties which lie in comparable but different middle class areas of Brooklyn. Since the properties are of the income producing variety, the referee appropriately relied on the capitalization of income approach, but a pivotal focus of the appeals is the correctness of the capitalization rate he chose. Although that rate lies within the range of expert testimony, we believe it is too low.

Experts for both parties reached their conflicting net income figures by totaling the income and expenses for each property for the three years in issue, deducting the expenses from the income and then dividing the result by three. To the net incomes thus arrived at, each then applied a capitalization rate chosen as suitable. This technique resulted in each expert arriving at values which did not vary from year to year. In calculating income and expense for two of the properties, the petitioners used the 1976, 1977 and 1978 fiscal years, the first of which ended April 30, 1976,[1] nine months prior to the taxable status date of January 25 for the 1977-1978 tax year. Petitioners' expert, John Worster, employed an over-all capitalization rate of 12.34%, which included a rate of return of 10.1% plus 2.25% for depreciation adjusted from 2.5% to reflect the fact that building value was 90% of the total value.[2] The 10.1% rate of return was approximately 1.5 to 2.3 points higher than those of other investment yields analyzed by Worster who based the higher rate on the increased risk, lower liquidity and greater burden involved in managing real estate. His appraisal report included the following chart of comparable yields derived from the March, 1978 and 1979 editions of *The Appraiser*:

|  | "Jan. "1977 | Jan. 1978 | Jan. 1979 | Average |
|---|---|---|---|---|
| "U.S. 5-yr Bonds | 6.78% | 7.73% | 8.96% | 7.82% |
| "Corp. Bonds (AAA) | 7.96% | 8.41% | 9.25% | 8.54% |
| "Prime Rate | 6.25% | 7.93% | 11.75% | 8.64%." |

---

**1.** The figures for one property (Ocean Terrace) were based on the net income for each calendar year.

**2.** Worster's figures actually add to 12.35%.

Worster also testified that the 10.1% rate reflected the demands of real estate investors in light of the risks involved and the inflation rate.

The city's expert, Stanley Siebert, averaged the gross income totals for the fiscal year ending April 30, 1977 through April 30, 1979, thereby utilizing figures that commenced and ended a year later than those of petitioners. Although Siebert applied a capitalization rate of 9.5% to the net income, his appraisal report failed to mention depreciation and no explanation was provided either in the report or from the witness box as to how the rate had been determined.

With these figures before him, the referee adopted a capitalization rate of 10.5%, but he, too, seemed to omit depreciation as a factor, resulting in this court's remand of the case for further findings of fact (*Shore Haven Apts. No. 6 v Commissioner of Fin. of City of N.Y.*, 87 AD2d 608). Following the remand, the referee rendered another decision declaring that his original capitalization rate had included a 2% allowance for depreciation. In his calculation of income, the referee attempted to convert the conflicting fiscal year approaches to a calendar year basis by using two thirds of each fiscal year before the taxable status date and one third of the fiscal year following the status date. His determinations of value and the original assessments for all three years are as follows:

|  | Assessment | Referee |
| --- | --- | --- |
| Shore Haven Apt. No. 6 | $1,150,000 | $1,115,500 |
| Ocean Terrace | $2,150,000 | $2,072,000 |
| Southampton Apartments | $2,550,000 | $2,458,000. |

We conclude that the referee's effort to conform the income periods to the taxable status date was reasonable under the circumstances (see 7 Nichols, Eminent Domain [3d ed], § 4.08 [4] [c]; New York City Charter, § 1507), and we also adopt his findings as to expenses. Net income is thus:

| | | |
| --- | --- | --- |
| Shore Haven Apt. No. 6 | - | $214,719 |
| Ocean Terrace | - | $378,818 |
| Southampton Apartments | - | $473,127. |

Our agreement with the referee's conclusions as to net income does not dispose of the appeals, of course, since the critical question remains the propriety of his capitalization rate. The capitalization rate represents the return an investor would expect if the property were purchased (Lee & LeForestier, Review & Reduction of Real Property Assessments in New York [2d ed], § 1.06) and it is a crucial variable since small differences in it are magnified when net income is converted to capital value (Shenkel, Modern Real Estate Appraisal, p 206). What the capitalization rate should be is a factual issue (*Diocese of Buffalo v State of New York,* 18 NY2d 41; *People ex rel. Manhattan Ry. Co. v Woodbury,* 203 NY 231) which should not be derived solely from the subjective judgment of the court (*Matter of City of New York [Oceanview Terrace],* 42 NY2d 948) in disregard of the evidence presented (*Matter of City of New York [A. & W. Realty Corp.],* 1 NY2d 428). The findings must fall within the range of expert testimony, be supported by evidence, and be adequately explained by the referee (*Matter of City of New York [Reiss],* 55 NY2d 885; *Matter of City of New York [A. & W. Realty Corp.], supra*). While the referee's findings in the instant case, both as to capitalization rate and valuation, lie between the respective opinions of the experts, it is apparent that the city's conclusions were given more weight than they deserved, particularly because its appraiser failed to mention depreciation or to provide any explanation of the capitalization rate he selected.

When an expert opinion lacks factual support and is bolstered only by the expert's qualifications, it carries little probative value (*Vircillo v State of New York,* 24 AD2d 534; *Katz v State of New York,* 10 AD2d 164) and should be rejected (*Matter of Seagram & Sons v Tax Comm. of City of N. Y.,* 18 AD2d 109, affd 14 NY2d 314; *Yonkers Urban Renewal Agency v 44 Prospect St.,* 49 AD2d 894) for it cannot be weighed intelligently. If an appraiser's opinion has any substantial basis in fact, it is fair to assume that the facts will be spread on the record (Coon, The Appellate Lawyer Looks at Opinion Evidence in an Appropriation Case, 39 NY State Bar J 305). Although we do not regard the opinion of petitioner's expert as determinative (see

*Matter of City of New York [A. & W. Realty Corp.]*, 1 NY2d 428, *supra*), his appraisal report is entitled to significant weight because it is supported by explicit details and analysis. On the record before us, we find a rate of return of 9.25% plus 2.25% for depreciation more appropriate to the properties in issue than the 10.5% rate adopted by the referee. The over-all rate of 11.5% we thus adopt is quite consistent with the 11.37% we earlier found for apartment property in *Matter of Willowbrook Assoc. v Finance Administrator of City of N. Y.* (77 AD2d 901), involving tax years immediately preceding the ones before us. The referee's determination results in a return on the ownership and management of real property inferior to the average return for triple A corporate bonds for the years in issue.

Adopting the referee's land values and adding the tax rate of 8.75% to our over-all capitalization rate of 11.5%, we arrive at a total of 20.25%, which, when applied to the net income, results in the following conclusions:

|  | Land | Building | Total |
|---|---|---|---|
| Shore Haven Apt. No. 6 | $120,000 | $940,300 | $1,060,300 |
| Ocean Terrace | $220,000 | $1,650,700 | $1,870,700 |
| Southampton Apartments | $230,000 | $2,106,400 | $2,336,400. |

The judgments should be modified accordingly.

DAMIANI, J. P., GIBBONS and GULOTTA, JJ., concur.

Three judgments of the Supreme Court, Kings County, each dated October 1, 1980, as amended April 19, 1982, modified on the law and the facts, so as to provide the following:

|  | Land | Building | Total |
|---|---|---|---|
| Shore Haven Apt. No. 6 | $120,000 | $940,300 | $1,060,300 |
| Ocean Terrace | $220,000 | $1,650,700 | $1,870,700 |
| Southampton Apartments | $230,000 | $2,106,400 | $2,336,400. |

As so modified, judgments affirmed, without costs or disbursements.