■ In the Matter of CONTINENTAL ASSURANCE Co. and/or MOEBY REALTY CORP., Appellant, v MAYOR OF THE INCORPORATED VILLAGE OF LYNBROOK et al., Respondents.—In consolidated proceedings pursuant to Real Property Tax Law article 7 to review assessments made on certain real property for the tax years 1976 to 1980 inclusive, the petitioner appeals from a judgment of the Supreme Court, Nassau County (McGinity, J.), entered July 6, 1983, which confirmed the assessments and dismissed the petitions.

Justice Rubin has been substituted for former Justice, now Judge Titone (*see,* Judiciary Law § 21; *Wittleder v Citizens' Elec. Illuminating Co.,* 47 App Div 543).

Judgment reversed, on the law and the facts, with costs, and matter remitted to Special Term for a new determination in accordance herewith.

The subject proceeding involves the assessments on No. 8 Freer Street, Village of Lynbrook, Nassau County. The property is improved with a four-story office building and is located approximately 150 to 250 feet south of Sunrise Highway, outside the downtown business area of the village. The building was constructed in or about 1971.

For each year under review, the property was assessed at $1,722,700.

Appraisers for both petitioner and respondents reported their estimates of fair market value. Since there were fractional assessments, they applied State equalization ratios to those values and derived therefrom their estimates of the "correct" or "Indicated" assessed values.

Petitioner's expert's appraisal report valuations were:

| "Taxable Status Date | Fair Market Value | Actual Assessed Value | Correct Assessed Value | Reduction Indication |
|---|---|---|---|---|
| "Jan. 1, 1976 | $2,161,500 | $1,722,700 | $1,594,106 | $128,594 |
| "Jan. 1, 1977 | $2,330,500 | $1,722,700 | $1,586,837 | $135,863 |
| "Jan. 1, 1978 | $2,476,000 | $1,722,700 | $1,576,964 | $145,736 |
| "Jan. 1, 1979 | $2,445,000 | $1,722,700 | $1,386,071 | $336,629 |
| "Jan. 1, 1980 | $2,200,000 | $1,722,700 | $1,247,180 | $475,520". |

Respondents' expert's appraisal report valuations were:

| | "VALUE | INDICATED [ASSESSED VALUE] | REDUCTION |
|---|---|---|---|
| "1976 | $2,647,900 | $1,952,800 (73.75)% | 0 |
| "1977 | $2,843,500 | $1,936,100 (68.09) | 0 |
| "1978 | $3,020,700 | $1,923,900 (63.69) | 0 |
| "1979 | $3,086,100 | $1,749,500 (56.69) | 0 |
| "1980 | $3,025,900 | $1,713,600 (56.63) | 9,100". |

Special Term found no overassessments. Its value conclusions were:

| Taxable Status Date | Fair Market Value | Indicated Assessed Value | Actual Assessed Value |
|---|---|---|---|
| "January 1, 1976 | $2,609,457 | $1,924,474 | $1,722,700 |
| "January 1, 1977 | $2,567,823 | $1,748,431 | $1,722,700 |
| "January 1, 1978 | $2,859,566 | $1,821,258 | $1,722,700 |
| "January 1, 1979 | $3,146,935 | $1,783,997 | $1,722,700 |
| "January 1, 1980 | $3,146,848 | $1,782,060 | $1,722,700". |

In deriving their market values, both experts used the capitalization of net income approach, with petitioner's expert using the split rate building residual capitalization technique and respondents' expert using an over-all rate.

In addition, petitioner's expert used the $1,825,000 all-cash price of a 1978 sale of the subject property to its current owner, Moeby Realty Corp., and compared it to his 1978 income approach valuation of $2,476,000. He stated that his experience is that the market discounts 20 to 25% of value for an all-cash sale; that, reducing the $2,476,000 1978 income approach valuation by this discount brings it "down to a million-eight" and "tend[s] to confirm my opinion of value as of 1978, as well as my opinion of value" for the other years in issue.

Special Term used an over-all capitalization rate and confirmed the assessments for each year under review.

On this appeal, petitioner argues that the 1978 sale of the subject property was bona fide and occurred within the period under review, that Special Term failed to give this sale any weight, and that this was error as a matter of law (see, Matter of Zipel Realty Corp. v Finance Admin., 69 AD2d 837).

We find no merit to this contention. The seller was petitioner Continental Assurance Co., which, as mortgagee under

assignment, had instituted foreclosure proceedings in 1975, took title under a referee's deed in 1977, and, in 1978, made the subject $1,825,000 all-cash sale to petitioner Moeby Realty Corp. These circumstances were sufficiently "abnormal" to preclude any finding of error in Special Term's failure to give the sale any weight (*see, Plaza Hotel Assoc. v Wellington Assoc.*, 37 NY2d 273, 277; *Matter of Zipel Realty Corp. v Finance Admin.*, 69 AD2d 837, *supra)*.

Petitioner further argues, however, that Special Term's failure to employ a split rate building residual capitalization technique and to make a provision for recapture of depreciation of the building was error as a matter of law. On the facts of this case, we are in accord.

There are no fixed rules for the establishment of a capitalization rate (*Onondaga Sav. Bank v Cale Dev. Co.*, 63 AD2d 415). What the capitalization rate should be is a factual issue (*Shore Haven Apts. No. 6 v Commissioner of Fin.*, 93 AD2d 233, 236). As such, it is a matter of proof and argument (*Onondaga Sav. Bank v Cale Dev. Co., supra*). However, the suitability and appropriateness of particular capitalization techniques in particular factual contexts have been addressed in various decisions of our courts.

Preliminarily, we note that at bar the parties stipulated during the course of the trial to land values. Petitioner correctly notes that the value of the building was approximately 85 to 90% of the total value of the property. Further, petitioner's expert reported that the building had a remaining 40-year life (2.5% annual depreciation). In the first *Shore Haven* case (87 AD2d 608) we stated: "Moreover, when the referee capitalized the income from the properties, he did not distinguish between the land and buildings, and made no apparent provision for a recapture of depreciation on the buildings; thus, we are unable to discern what provision, if any, was made for the recapture of depreciation (cf. *Matter of Zipel Realty Corp. v Finance Admin.*, 69 AD2d 837, 838). Therefore, we must remit to the referee for further findings of fact * * * The referee should also state whether allowances were made for depreciation of equipment and depreciation of the buildings, and if such allowances were made, specify what those allowances were. These findings are essential to an intelligent review of the judgments appealed from" (*Shore Haven Apts. No. 6 v Commissioner of Fin.*, 87 AD2d 608, 609, *supra*).

At bar, respondents and Special Term's over-all capitaliza-

tion rate is, on the facts of this case, subject to the same criticism we made of the referee's decision on the first *Shore Haven* appeal.

In the second *Shore Haven* decision (*Shore Haven Apts. No. 6 v Commissioner of Fin.*, 93 AD2d 233, *supra*) we noted that, after our remand, the referee rendered another decision stating that he had included a 2% allowance for depreciation in his original 10.5% over-all capitalization rate. It will be noted that this left a mere 8.5% return to investor (excluding depreciation). We concluded that an appropriate rate of return was 9.25% plus 2.25% for depreciation (see adjustments made to over-all rate to account for depreciation in *Matter of Willowbrook Assoc. v Finance Administrator*, 77 AD2d 901, 905, *appeal dismissed* 54 NY2d 834).

We conclude that, on the particular facts at bar, the court erred in rejecting petitioner's split rate building residual technique, and in using respondents' expert's over-all capitalization rate which transparently failed to identify and provide for a building recapture factor. As we stated, in *Matter of City of New York* (*Oceanview Terrace*) (52 AD2d 877, 878, *affd* 42 NY2d 948): "However, the trial court utilized a single over-all capitalization rate of 11%. Although an over-all rate of capitalization is useful, it may be vulnerable unless it is based upon separate capitalization rates computed by one or another residual method on land and buildings (see *Matter of City of New York* [*First Elephant Estates-La Hermosa Church*], 17 AD2d 317, 321)".

In affirming that determination, the Court of Appeals stated, in pertinent part (*Matter of City of New York* [*Oceanview Terrace*], 42 NY2d 948, 949-950, *supra*): "In using capitalization of income it is important to ensure that an improper distortion is not introduced because of disproportionate values assignable to land and buildings (*Matter of City of New York* [*First Elephant Estates-La Hermosa Church*], *supra*, p 321, n). The use of split capitalization or the 'residual method' provides a check on the market value which is somewhat more reliable than over-all capitalization. The use of an over-all capitalization rate implies that income is derived in equal shares from the land and the buildings but in this case both the city's expert and Special Term found a wide discrepancy between the value of the land and the value of the buildings. This discrepancy renders uncertain the assumption that income is derived in equal shares from the land and the buildings since the land, being used for summer cottages, is situated in close proximity to the beach and the buildings are

simple stucco bungalows. Also, the 11% rate employed by the city's expert included a depreciation factor applicable only to the buildings. Under these circumstances the Appellate Division was justified in using split capitalization rates".

Petitioner's final contention is that Special Term's findings of rental values, expenses and capitalization rates were against the weight of evidence. It is argued that, based upon the overwhelming weight of the credible evidence, petitioner's net income figures and valuations should have been adopted.

We agree to the extent of concluding that the court's findings on these issues were contrary to the credible evidence and that petitioner's figures and valuations were established and should be adopted. We note that petitioner's rental values were based on actual leases from the property under review, which rents its expert found "to be representative of [stated] rental rates in the vicinity considering the quality of the premises" (see, Matter of County Dollar Corp. v City of Yonkers, 97 AD2d 469, 472, lv dismissed 61 NY2d 759). Further, to the extent that respondents' expert used actual leases in the subject property (in addition to adjusted-square-foot rentals from alleged comparable leases made in other communities), his rental values were impugned by evidence that in several instances (leases M, N, P, Q) his square-foot rental values were inflated since they were based on usable space (a lower number of square feet) rather than rentable space (a higher number of square feet).

Petitioner contends in its main brief, and we agree, that the valuations should be calculated and the assessments reduced based on adoption of petitioner's net income figures, split rate building residual technique, capitalization rates, and on the stipulated ratios and land values. Although petitioner's brief sets forth a table of the proposed market values and assessed values, in reversing the judgment we remit to Special Term for calculation of those figures and entry of a judgment consistent herewith. Mollen, P. J., Thompson, Bracken and Rubin, JJ., concur.