■ In the Matter of STEVEN F. QUILL et al., Respondents-Appellants, v CATHEDRAL CORPORATION, Formerly Known as COLUMBIA CORPORATION, Appellant-Respondent. [627 NYS2d 157] —Spain, J. Cross appeals from an order of the Supreme Court (Cobb, J.), entered December 21, 1993 in Columbia County, which, in a proceeding pursuant to Business Corporation Law § 623, determined the fair value of petitioners' stock.

This proceeding was brought by petitioners to determine the fair value of their stock; petitioners had dissented from a proposed sale of respondent's assets comprising one of its business enterprises. Prior to the proposed sale, respondent was engaged in two distinct and separate lines of business. The first was run by Columbia Corporation and was engaged in the manufacture of paperboard products. The second business was run by Columbia's wholly owned subsidiary, Cathedral Envelope Company, Inc., and involved the printing of church collection envelopes.[1]

On September 20, 1989, respondent's stockholders voted to sell Paperboard's assets to Yorktowne Paper Mills, Inc. pursuant to the terms of an agreement dated August 29, 1989. The sale to Yorktowne took place on February 12, 1990. Petitioners, along with three other shareholders, dissented from the sale and demanded payment for the fair value of their shares *(see,* Business Corporation Law §§ 623, 910). Petitioners rejected respondent's offer of settlement and commenced the instant proceeding.

At the trial before Supreme Court both sides presented evidence and testimony with respect to the fair value of petitioners' shares. According to the appraisal report prepared

1. For ease of reference, Columbia's paperboard operation will be referred to as "Paperboard" and Cathedral's printing operation will be referred to as "Envelope". It is also noted that at the time of the proposed sale, respondent's name was Columbia Corporation. After the sale took place respondent began to use its current name.

by respondent, the fair value was \$557 per share.[2] Petitioners' report concluded that the fair value of the share was \$1,248 per share.[3] At the conclusion of the trial, Supreme Court, with some adjustments, basically accepted petitioners' method of valuation and determined the fair value to be \$900.25 per share.[4] The \$900.25 fair value figure was a total of Supreme Court's determination of the fair value of Paperboard (\$562.22), Envelope (\$244.67), excess cash (\$78.19) and vacant land (\$15.17).

Respondent appealed from Supreme Court's order excepting that portion thereof which valued respondent's pension plans. Petitioners cross-appealed from only so much of the court's order relating to the pension plans.

Initially, we note that Business Corporation Law § 623 offers no specific methodology for valuation. However, in *Matter of Walt's Submarine Sandwiches* (173 AD2d 980, *lv denied* 78 NY2d 860), relied upon by Supreme Court, this Court determined that because no specific methodology under Business Corporation Law article 11 existed, "a corporation's value should be what a willing buyer would offer for it, as a viable enterprise, in an arm's length transaction" *(supra,* at 980). Respondents, arguing that Supreme Court erred in its reliance on the methodology set forth in *Walt's,* offer no compelling reason why the same methodology should not be adopted for valuation purposes under Business Corporation Law § 623. We conclude that Supreme Court's reliance was proper.

Respondents further contend that petitioners' appraiser, Eugene Sommer, failed to weigh all three factors necessary for valuation—net asset value, investment (income) value and market value *(see, Matter of Endicott Johnson Corp. v Bade,* 37 NY2d 585)—in determining the separate values of Paperboard and Envelope. However, the weight to be accorded each factor depends on the facts and circumstances of each particular case *(see, Matter of Blake v Blake Agency,* 107 AD2d 139, *lv denied* 65 NY2d 609). Equal weight or any weight at all

2. Respondent's appraisal report was later revised to reflect a more current value and the new value given was \$569 per share.

3. Petitioners' appraisal report initially listed 11,439 shares as the total number of outstanding shares. This figure, however, was incorrect and petitioners' report was later revised to reflect the actual number of shares, 11,510; the fair value was recalculated to be \$1,230.28 per share.

4. Supreme Court ordered respondent to pay petitioners \$420.25 per share. This figure takes into account the \$480 per share that respondent already paid petitioners pursuant to its original offer of settlement *(see,* Business Corporation Law § 623 [g]) (\$900.25 − \$480 = \$420.25).

need not necessarily be given each factor *(see, Matter of Gift Pax,* 123 Misc 2d 830, *affd sub nom. Matter of Fleischer,* 107 AD2d 97). Further, the valuation process is fact specific *(see, Matter of Walt's Submarine Sandwiches, supra)* and "rests largely within the discretion" of the trial court *(Matter of Endicott Johnson Corp. v Bade, supra,* at 588).

In the valuation of Paperboard respondents argue that a midpoint between the asset value approach and the investment (income) value approach should have been used by Supreme Court. Sommer, testifying for petitioners, stated that after considering all three methods of valuation he rejected the asset and investment (income) methods of valuation. Sommer found that the sale of all of Paperboard's assets within five months of the valuation date made pursuant to a contract entered into within a month of the valuation date to be the best indication of Paperboard's value.

Although in cases of nonliquidation, such as the one before this Court where the business is operating, investment (income) value is generally used as the determinant of fair value *(see, e.g., Matter of Endicott Johnson Corp. v Bade, supra; see also, Matter of Continental Assur. Co. v Mayor of Inc. Vil. of Lynbrook,* 113 AD2d 795, *appeal dismissed* 66 NY2d 915; *Matter of City of New York [First Elephant Estates-La Hermosa Church],* 17 AD2d 317), the fair value of such a business can be fixed by a sale in an arm's length transaction *(see, Alpert v 28 William St. Corp.,* 124 Misc 2d 512; *see also, Matter of City of New York [First Elephant Estates-La Hermosa Church], supra).* Given its intimate knowledge of the facts, Paperboard's net operating losses/profits for the preceding years and the timing of the arm's length sales of assets, Supreme Court's discretion *(see, Matter of Endicott Johnson Corp. v Bade, supra)* regarding the value of Paperboard should not be disturbed.

In the valuation of Envelope the parties' experts agreed that the investment (income) approach was the best method to be applied. However, the parties disagree on the beta (risk) factor to be applied. Respondent's report used a risk factor 3.25 while petitioner's report used a risk factor of 0.75. After considering the extensive testimony of the parties' experts, Supreme Court correctly determined that petitioners' calculations would be the proper starting point. This determination was based upon Envelope's stable client base, stable revenues, abundant cash assets and low level of debt. The record supports Supreme Court's decision to rely on petitioners' methods

*(see, Matter of Raskin v Walter Karl, Inc.,* 129 AD2d 642; *Matter of Blake v Blake Agency,* 107 AD2d 139, *supra).* Supreme Court's subsequent calculation, using figures not disputed by parties, was also proper.

Respondents further argue, however, that Supreme Court erred in its application of a marketability (illiquidity) discount to Paperboard and Envelope. Respondent's experts testified that a discount of either 30% or 50% should be applied. The experts argue that such a discount is appropriate in this matter because the shares are not publicly traded and therefore difficult to market *(see, Matter of Seagroatt Floral Co.,* 78 NY2d 439; *Matter of Joy Wholesale Sundries,* 125 AD2d 310).

Supreme Court refused to apply a marketability discount to Paperboard *(see, Matter of Walt's Submarine Sandwiches,* 173 AD2d 980, *supra);* it did, however, apply a 15% discount to Envelope. We conclude that Supreme Court's reasoning is sound. Respondent received inquiries for Paperboard from four or five buyers; it obtained two firm offers and finally sold Paperboard for the asking price. Paperboard was marketable. Turning to Envelope, in accepting respondent's premise that a marketability discount should be applied, the court was not then required to accept respondent's figures wholesale *(see, e.g., Matter of New York City Tr. Auth. [Superior Reed & Rattan Furniture Co.],* 160 AD2d 705). Supreme Court's application of a 15% marketability discount to Envelope finds support in the record and was well within its discretion.

Respondent's final contention is that Supreme Court erred by not including the pension plans as an excess asset.[5] In its decision, Supreme Court noted that there were essentially four alternatives in valuing the pension plans. The first was to terminate the plans and have them revert back to the employer; however, the court recognized the tax problems. The second alternative was to sell the plans. As Supreme Court noted, however, the purchase and sale agreement with Yorktowne allowed it to take over the plans with no added cost. Yorktowne chose not to do so and Supreme Court did not err in concluding that a sale would not likely occur. The third alternative was to use the excess to benefit plan participants. This approach would not yield excess assets to the corporation but instead would be a benefit only to its employees. The last alternative was to decrease or eliminate contributions to the plans until the excess equaled liabilities. Petitioners' appraisal report itself states that the "most probable utilization of the

---

5. There were four separate plans as of the valuation date.

overfunding would have been to defer future Plan contributions by [Envelope]".

After a thorough analysis of all four alternatives, Supreme Court concluded that the pension plans should not be considered an excess asset. The record supports Supreme Court's determination. Given its unique position in assessing the evidence *(see, Matter of Walt's Submarine Sandwiches, supra)*, its decision on this point should not be disturbed.

Cardona, P. J., White, Casey and Peters, JJ., concur. Ordered that the order is affirmed, without costs.